Danny Duryea YORK, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–88–00236–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 29, 1988.

Kenneth W. Smith, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Kathy Giannaula, Asst. Dist. Atty., Harris County, for appellee.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

DUNN, Justice.

A jury assessed appellant's punishment at 65 years imprisonment after convicting him of aggravated robbery.

In points of error two through seven, appellant asserts that the trial court erred in accepting as racially neutral the prosecutor's explanations of his peremptory challenges during jury selection of panelists number five, 11, 20, 27, 29, and 30, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under *Batson*, once the defendant makes a prima facie showing of purposeful discrimination in the selection of the jury, the burden shifts to the State to come forward with a racially neutral explanation, related to the particular case, for challenging black jurors. Once the prosecutor has articulated racially neutral explanations, the other side can attempt to show that such explanations are merely pretextual. *Keeton v. State*, 749 S.W.2d 861, 865 (Tex.Crim. App.1988) (citing with approval *State v. Antwine*, 743 S.W.2d 51 (Mo.1987)).

The Texas Court of Criminal Appeals went on to articulate that the following five part analysis *"will weigh heavily against the legitimacy of any race neutral explanation"*:

1) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically; 2) no examination or only a perfunctory examination of the challenged juror; 3) disparate examination of the challenged juror, i.e., questioning challenged venire-

person so as to evoke a certain response without asking the same question of other panel members; 4) the reason given for the challenge is unrelated to the facts of the case; and 5) disparate treatment where there is no difference between responses given and unchallenged venirepersons.

*Keeton,* 749 S.W.2d at 866 (emphasis in original).

The *Keeton* court also cited *Antwine,* 743 S.W.2d at 51 with approval for the proposition that *"Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate 'hunches' and past experience, so long as racial discrimination is not the motive." *Keeton,* 749 S.W.2d at 865 (citing *Antwine,* 743 S.W.2d at 64).

In *Keeton,* the Court of Criminal Appeals also rejected both the "clearly erroneous" and the "abuse of discretion" standards of review, holding instead that:

[O]ur focus, as well as that of the trial judge, should be on whether purposeful discrimination was established. We will of course consider the evidence in the light most favorable to the trial judge's rulings and determine if those rulings are supported by the record. If the record supports the findings of the trial judge, they will not be disturbed on appeal.

*Keeton,* 749 S.W.2d at 870.

The record in the case at bar reflects that after appellant made a prima facie showing of purposeful discrimination, the State offered the following explanations for the six challenged black venirepersons:

I had wanted to continue voir dire. There were several other areas that I wanted to go into, however, was not permitted to go into by the fact that my voir dire was cut off when I was in the process of voir diring the jury. I struck juror number—at least my notes reflect that I struck ... Juror No. 5 [Betty Young Clifton]. I believe Juror No. 5 was a black female. According to her card she works for the Department of Human Services or Resources and she is involved in social work.

The fact that the jury in this case was going to assess punishment, I didn't want anybody involved with social work sitting on this particular jury. In addition to that, in response to questions by the defense attorney, she indicated that she had either a friend or a relative in the penitentiary and I'm not—my notes are not sure—my notes say friend but I don't know if it was a friend or relative or someone she knew that was close to her was in the penitentiary or had just got out of the penitentiary. For those reasons, that's why I struck Juror No. 5.

Juror No. 6 was a black man, I recall, and he was not struck.

I think the next black person I struck would be Juror No. 11, Daisy Perry. My notes indicate that she did not seem to pay attention. I don't have any other notes other than that. Her card merely reflects that she's a housewife, no husband, no employer, no apparent source of income only leads me to believe that she was on some type of family assistance or some type of welfare. I just—I did not —I did not get to the point in voir dire where I was able to question each individual juror as I had intended to towards the end of my voir dire.

Juror No. 19, I believe, was a black female who I did not strike.

Juror No. 22, I did strike, Ms. [Eliza] Wilson, black lady. I believe her—she was employed by HISD in the food service. I made a note in my—I made a note in my papers that she chewed gum continuously and just sat there and I don't recall that she ever responded to any question that I put out to the general panel nor did she respond to any questions put out by the defense attorney, for that matter. I don't know if she was not understanding what was being said. She definitely was not responsive to either one of us.

Juror No. 27 [Vanessa Norine Sargent], black lady, I recall, according to her card that she filled out, she has no employer, her husband has no employer. It's been my experience that people who do not have a vested interest in the com-

munity with some sort of job generally don't make good jurors and the fact that they both were unemployed showed that they did not have any real vested interest in the community.

I believe Juror No. 29 was the next black person I struck, Jack Craig. He was a black male, 36 years of age. In response to my question about one witness testimony, I recall that he raised his hand and said that he would not be able to find anyone guilty based on one witness' testimony even if he believed that witness beyond a reasonable doubt. He also indicated that he was a truck driver, indicates Pasadena Rentals. When I was going to law school I was employed by Roadway Express, unloading and loading trucks with freight. The people who work in and around truck terminals are involved with trucking in general. I've just had bad experiences with them in the past and did not—based on the fact that he's a truck driver and the fact that he needed more than one witness is the reason why I struck that individual.

Juror No. 33, Mr.—looks like Wadell Livingston, works as a Metro bus driver. I have on my grid that he looked bored, that he appeared bored to me, nonresponsive to any questions that I put out to the panel as a whole or in rows of—that I addressed to individual to individual rows and the only time I saw movement out of him is when we, in error, brought him up in front of the bench. Sat expressionless throughout everybody's voir dire.

The State also noted that it only used nine of its 10 peremptory challenges, striking only six of the eight black venirepersons. Two black people and two Hispanic people served on the jury. See generally Seubert v. State, 749 S.W.2d 585, 588 (Tex. App.—Houston [1st Dist.] 1988, writ requested) (holding that Batson type error may be harmless if a fairly representative jury is selected, despite discriminatory practices).

The State struck Betty Young Clifton because "she had either a friend or a relative … or someone she knew that was

close to her [who] was in the penitentiary." The State explained that it was uncertain what the actual relationship was between Clifton and the person who was either in the penitentiary or had recently been released. Clifton was also struck because she was a social worker, and the State did not want a social worker on a jury that was going to assess punishment, as well as determine guilt/innocence.

The record reflects that there were at least six venire panelists, including Clifton, that were in some way either acquainted with or related to someone that was in the penitentiary or had just been released therefrom. The record also reflects that, of this number, the State only struck Clifton, leaving non-black panelists unstruck that also were acquainted with or related to someone that was in the penitentiary or had just been released therefrom.

Therefore, it is apparent from the record that Betty Young Clifton received disparate treatment from the State where there was no difference between her response and the responses given by other venire panelists that were not challenged.

However, the State also stated that Clifton had been struck because she was also a social worker. She was the only social worker on the panel. In explaining its striking of Clifton, the State offered an explanation in which the prosecutor's perceived group trait of social workers was not shown to apply specifically to Clifton. See Keeton, 749 S.W.2d at 866. Such a failure on the part of the State to tie the perceived group trait to the specific stricken panelist "will weigh heavily against the legitimacy of any race neutral explanation" offered by the State. Id.

We note, however, that Keeton also allows the State to make peremptory strikes based on the prosecutor's legitimate "hunches" so long as racial discrimination is not a motive. Keeton, 749 S.W.2d at 865.

The State's explanation for the strike indicates the prosecutor's "legitimate" concern that a social worker might be inclined to be lenient in assessing guilt/innocence and especially punishment. The issue then

becomes whether this "hunch" was racially neutral or motivated by racial discrimination.

█ In making this determination, we note that two blacks were not struck by the State and actually served on the jury. Additionally, the State did not exercise one of its peremptory strikes. This is indicative of the State's willingness to have blacks serve on the jury and thus counterbalances the heavy weight against the State's failure to tie the perceived trait of social workers specifically to Clifton. Under these facts, we hold that the State's "legitimate hunch," that social workers were not the type of jurors that the State sought, was racially neutral and was not motivated by racial discrimination.

█ Daisy Perry and Vanessa Norine Sargent were struck by the State because they were unemployed. They were the only unemployed venire members and therefore did not receive disparate treatment. Unemployment can be a valid reason for a peremptory challenge. *See Allen v. State*, 751 S.W.2d 931, 935 (Tex.App.—Houston [1st Dist.] 1988, no writ).

The State's reason for striking Perry and Sargent was racially neutral and was not merely a pretext.

Veniremember Jack Craig was struck because he was reluctant to convict based on only one witness' testimony, and because he was a truck driver.

At least seven other venire panelists indicated that they too were reluctant to convict based on one witness' testimony. The State did not peremptorily strike any of these other, non-black panelists.

Therefore, it is apparent from the record that Craig received disparate treatment.

However, the State also explained that Craig was struck because he was a truck driver. He was the only truck driver on the panel. The State failed to show how the prosecutor's perceived group bias against truck drivers applied specifically to Craig. *See Keeton*, 749 S.W.2d at 866. This failure "will weigh heavily against the legitimacy of any race neutral explanation." *Id.*

As previously noted, *Keeton* specifically allows the State to base its peremptory challenges on the prosecutor's legitimate "hunches" and past experience, as long as racial discrimination is not a motive. *Keeton*, 749 S.W.2d at 865. Here, the striking of Craig was based on personal experience, and was not necessarily reflective of purposeful racial discrimination. The issue then is whether the prosecutor's decision to strike Craig, based on past personal experience, was racially neutral or motivated by racial discrimination. This presents us with the same situation and analysis as applied to venire panelist Clifton as set out herein above.

█ We hold that under the facts, the State's decision to strike Craig, because of the prosecutor's bad experience with truck drivers, was racially neutral and was not motivated by racial discrimination.

Black venire panelists Eliza Wilson and Wadell Livingston were struck for being unresponsive. Because the court reporter cannot record the venire panel's nonverbal responsiveness or the lack thereof, the only evidence of such was the statements made by the prosecutor and the defense counsel.

Immediately following the defense attorney's argument, the trial court stated that:

> Based upon the evidence that has been submitted in support and opposition of this motion *and based upon the Court's opportunity to observe and see this jury panel* and to see the jurors who— prospective jurors who appeared at the bench for questioning, the Court finds that the State has offered sufficient racially neutral reasons for the exercise of its peremptory challenges.

(Emphasis added.)

Because "[t]he findings of the trial judge largely will turn on an evaluation of credibility, appellate courts should give these findings 'great deference.'" *Batson*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21; *Keeton*, 749 S.W.2d at 869.

█ We therefore shall rely upon the trial court's determination of the credibility of the prosecutor and the defense counsel,

as well as its observation and assessment of the venire panel and the entire voir dire proceeding.

In view of the foregoing, and because the State, while not using one peremptory challenge, challenged only six of eight black venirepersons, the remaining two of whom served on the jury, and considering the evidence in the light most favorable to the trial judge's rulings, we conclude that the record supports the findings by the trial judge of no purposeful discrimination.

Points of error two, three, four, five, six, and seven are overruled.

The discussion of the remaining points of error does not meet the criteria for publication, Tex.R.App.P. 90, and is thus ordered not published.

The judgment of the trial court is affirmed.