**Darrin Earl STRAUGHTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–89–211–CR, 01–89–212–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 27, 1990.

Connie B. Williams, Houston, for appellant.

John B. Holmes, Dist. Atty., Lester Blizzard, Dist. Atty., Joe Roach, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and DUNN and O'CONNOR, JJ.

## OPINION

EVANS, Chief Justice.

A jury convicted appellant of unauthorized use of a motor vehicle and of two counts of burglary of a motor vehicle with intent to commit theft. (All three offenses took place on the same date, but there were three different complainants.) The jury also found two enhancement paragraphs true, and assessed appellant's punishment at life imprisonment for all three offenses.

In October 1988, police officers were called to an apartment complex, because there was an auto theft in progress. A dispatcher told the police officers that the suspects were two black males. When the officers arrived, they drove around the complex until they saw two black male suspects in a black Oldsmobile. The suspects drove away at a high rate of speed, and the officers chased them. The suspects' vehicle struck a concrete curb, and three of the car's tires blew out. The driver lost control of the car, which eventually stopped, and the suspects got out of the car. Appellant was the driver of the vehicle. The officers then returned to the apartment complex and found a third suspect in another car. The car's trunk had "T-tops" in it, which had been taken from two nearby cars in the complex. The officers then took appellant and the other two suspects to the police station and turned them over to an auto theft detective. After the detective questioned appellant, appellant gave a written confession.

■ In his first and second points of error, appellant claims the trial court erred in admitting his written confession into evidence, because it was made involuntarily and he was not taken before a magistrate before giving the confession. The determination of whether a confession is voluntary must be decided upon the totality of the circumstances surrounding its acquisition. *McCoy v. State*, 713 S.W.2d 940, 955 (Tex. Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). The trial court is the sole trier of facts and the exclusive judge of the weight and credibility of the witnesses at a suppression hearing. *Barney v. State*, 698 S.W.2d 114, 121 (Tex.Crim.App.1985); *Burkett v. State*, 760 S.W.2d 345, 346 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

■ In our review of the trial court's ruling, we are limited to a consideration of whether the trial court's action constituted an abuse of discretion. *McCoy*, 713 S.W.2d at 955. We may not disturb the trial

court's finding if it is supported by evidence in the record. *Self v. State,* 709 S.W.2d 662, 665 (Tex.Crim.App.1986).

■ Appellant testified at the suppression hearing that he was not taken before a magistrate before he signed the confession. He said he was never given the right to have an attorney present, and was never told he had the right to an attorney. He said he did not understand his rights when he gave the confession, and that he was told his sentence would be only 15 years if he agreed to lead the police to someone who was selling stolen goods. He said he would not have signed the confession if he had known the police would not carry out this "deal."

The auto theft detective who took appellant's confession testified that he gave appellant the *Miranda*[1] warnings, and that appellant said he understood each warning and would give a statement. He said appellant did not request an attorney, and that appellant was not threatened, coerced, or promised anything in return for his statement. He said he gave appellant the *Miranda* warnings a second time before he started to type the statement. On cross-examination by the prosecutor, appellant acknowledged that the confession had the *Miranda* warnings on it, and that he had written his initials on each warning. He said, however, he had not read the statement, that he could not read, and had never learned to read in school. He said the police detective did not read the *Miranda* warnings to him.

Appellant admitted he had been convicted five times before, but he insisted he was not familiar with arrest procedures, so he did not know what his rights were. He admitted, however, that he knew he had the right to a court-appointed attorney. He also admitted he was not forced to confess. He further said the police detective had not promised him he would get 15 years if he made the confession. He also admitted that the officer read the statement to him after it had been typed, and gave him a chance to correct it. He admit-

ted that he was well aware of the contents of the statement.

The police detective said that he had not taken appellant before a magistrate before appellant gave his confession. He did, however, give appellant the *Miranda* warnings and heard appellant say he understood each warning. The officer said he had not forced appellant to confess, and he had made no promises or bargains of leniency to appellant. He denied even discussing any promise of a lesser sentence. He said appellant had told him he could read and write.

The trial court found that no promises had been made to appellant, appellant was given his *Miranda* warnings more than once before he gave his written statement, and, after appellant received the warnings, he waived all his rights. We conclude that the issue of whether appellant's confession was voluntary was a matter for the fact finder to decide at the suppression hearing. We find the evidence in the record supports the trial court's findings on that issue.

■ According to TEX.CODE CRIM.P.ANN. art. 15.17 (Vernon Supp.1991), an arresting officer shall take the accused before a magistrate so that the magistrate may inform the accused of his rights. The failure to comply with article 15.17 does not, however, automatically invalidate a confession. *Williams v. State,* 692 S.W.2d 671, 675 (Tex.Crim.App.1984). To render a confession invalid, the accused must show some causal connection between the officer's failure to take him before a magistrate and his confession. *Waller v. State,* 648 S.W.2d 308, 311 (Tex.Crim.App.1983); *Eubanks v. State,* 635 S.W.2d 568, 571 (Tex.App.—Houston [1st Dist.] 1982, no pet.). The record in this case does not show any causal connection between the officer's failure to take appellant before a magistrate and appellant's confession.

We overrule points of error one and two.

■ In his third and fourth points of error, appellant claims the trial court erred in failing to instruct the jury to find enhancement paragraph two "not true." He

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

asserts that the evidence was insufficient to support the jury's finding that the enhancement paragraph was true.

Appellant objected to the enhancement paragraph of the indictment because the cause number (494,316) alleged was erroneous. The State then moved to show the correct cause number (474,316), and appellant objected to the correction. The court overruled the objection and granted the State's motion, and the State then introduced the pen packet as proof of the conviction under cause number 474,316. Appellant did not object when the pen packet was admitted, but later moved to have the jury instructed that the enhancement paragraph was "not true." The trial court also denied that motion.

■ A variance in cause numbers is not necessarily fatal. *Cole,* 611 S.W.2d 79, 82 (Tex.Crim.App.1981). Here, the State proved the correct sentencing court and the correct county, date, and offense. The State's proof supported all the other allegations in the enhancement paragraph, and appellant was not prevented from finding the record of his past conviction and presenting any defense thereto. Thus, the court had no reason to instruct the jury as requested by appellant.

We overrule the third and fourth points of error.

In his fifth point of error, appellant contends the prosecutor was improperly allowed to exercise peremptory strikes against members of appellant's race, in violation of *Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986). He accordingly argues that the trial court erred in overruling his objection to the jury panel.

■ The equal protection clause forbids a prosecutor from challenging potential jurors solely on account of their race. *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. To challenge possible discriminatory selection of a venire, the defendant must make a prima facie showing that: (1) he is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove members of the defen-

dant's race from the venire; and (3) these facts, and any other relevant circumstances, raise an inference that the prosecutor excluded the venirepersons from the panel because of their race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722; *Henry v. State,* 729 S.W.2d 732, 734 (Tex.Crim.App. 1987). After the defendant makes this prima facie showing, the burden shifts to the prosecution to give racially neutral explanations for striking the venirepersons. *Tompkins v. State,* 774 S.W.2d 195, 200 (Tex.Crim.App.1987), *aff'd,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); *York v. State,* 764 S.W.2d 328 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd). The defendant may then offer evidence showing that the explanations are merely pretextual. *Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Crim.App.1988); *York,* 764 S.W.2d at 328.

■ Appellant argues that the State struck four female venirepersons, Montgomery, Berry, Washington, and Carroll, because they are black. The record shows that appellant is black, and that the venirepersons struck from the panel are also black. Thus, appellant met the first two *Batson* requirements of a prima facie showing of discrimination. The trial court made a finding on the record that appellant met the third requirement and ruled that appellant had established a prima facie case of discrimination. *See Dewberry v. State,* 776 S.W.2d 589, 591 (Tex.Crim.App. 1989).

On appeal, the State contends that appellant did not meet the third *Batson* requirement. The record shows that the State used its peremptory challenges to dismiss most of the black jurors on the venire panel. *See Keeton,* 749 S.W.2d at 867. Thus, we hold the trial court did not commit clear error in finding that appellant made a prima facie case of discrimination.

■ We next consider whether the State gave racially neutral explanations for striking the venirepersons. As to venireperson Montgomery, the State explained his reason for striking Ms. Montgomery as follows: (1) she was unable to accurately fill out the blanks in the jury information

card; (2) she indicated she would require the State to prove its case by "100% perfect proof;" (3) she expressed doubt whether she could consider the full range of punishment; and (4) she was inattentive and had repeated conversations with neighboring jurors during the voir dire.[2]

At the conclusion of the prosecutor's explanation, the trial court asked appellant's counsel if he had any questions to ask of the prosecutor. Appellant's counsel replied, "None, sir," and said that the record would just have to stand on its own. Although he said he did not recall the venireperson having made the responses the prosecutor said she made, he said he was not going to argue with the court and the prosecutor about what the venireperson had said. The prosecutor then represented to the court that venireperson Montgomery had made nonverbal communications by shaking her head "No" to his questions. The prosecutor further noted that the written transcript of the voir dire proceedings would not reflect such nonverbal communications. Appellant's counsel made no attempt to question the prosecutor about whether such nonverbal communications had been made, nor did he represent to the court that the prosecutor's explanations were unfounded.

As to venireperson Tracy Berry, the prosecutor explained his reasons for striking her as follows: (1) she seemed to have difficulty regarding the "perfect proof" standard, suggesting in both verbal and nonverbal cues that she would tend to hold the State to 100% perfect proof burden; (2) she had difficulty in grasping the concept of "beyond a reasonable doubt"; (3) she

was unsure whether she could consider a sentence on the range of up to 99 years or life; and (4) she had been inattentive during jury selection, appearing bored and showing no interest in the prosecutor's questions and concerns.[3]

After the prosecutor gave these explanations, the court again asked appellant's counsel if he wished to examine the prosecutor about them. Appellant's counsel declined to do so, stating only that he did not recall the juror having said she had a problem with the proof beyond a reasonable doubt, or indicating she could not consider the maximum punishment of life. Appellant's counsel also opined that the juror had been as attentive as most of the jurors, and more so than some others. He did not otherwise attempt to discredit the prosecutor's explanations.

As to venireperson Patrice Washington, the prosecutor explained the reasons for his strikes as follows: (1) she had a relative who had been convicted of the same type of criminal offense; (2) therefore, she would tend to be more lenient on appellant and his guilt in assessing punishment; and (3) she had difficulty in considering either a life or a 99-year sentence.[4] Consistent with his earlier actions, appellant's counsel did not seek to question the prosecutor about these explanations. He said only that he did not recall the venireperson having indicated any weakness on punishment or having said that she would not consider life imprisonment. Appellant's counsel also did not deny the prosecutor's remark that the venireperson's relative had been convicted of a similar felony offense. He argued

---

2. The record reflects that venireperson Montgomery simply responded (by nodding her head) that she did not know whether she would require the prosecutor to prove the case by "100% perfect proof." The prosecutor argued that "she was not sure; but she was pretty sure she would hold me to 100% perfect proof burden." The record does not reflect how venireperson Montgomery responded, if at all, to the prosecutor's question to the venire panel about whether they could consider the full range of punishment.

3. The record reflects that venireperson Berry was asked by the prosecutor whether she would hold the State to the "100% perfect proof" bur-

den. She responded that she would "just really have to listen to it." Venireperson Berry was further asked if she could consider a range of punishment of 25 years to life. The record reflects that she responded in the affirmative by nodding her head. Thus, the record tends to contradict the prosecutor's explanation on the range of punishment response.

4. The record reflects that venireperson Washington indicated that she could consider the full range of punishment. Thus, the record tends to contradict the prosecutor's explanation on the full range of punishment response.

only that the convicted person was a distant relative, the grandson of the venireperson's aunt.

Regarding the fourth venireperson, Beatrice Carroll, the prosecutor explained that Ms. Carroll was divorced from a Houston police officer, and that she had indicated a negative attitude toward police officers. The prosecutor said he was concerned that her marital difficulties might adversely influence her deliberations in the case.[5]

Again, appellant's counsel chose not to question the prosecutor about this explanation. Appellant's counsel responded only that he did not recall the venireperson's voice reflecting a negative attitude, and that the record would just have to show whether or not the venireperson had expressed a negative attitude. Finally, he argued that the State was merely "grasping at straws" to find some justification to exclude black jurors from the jury panel.

At the conclusion of these arguments, the court found that the prosecution's explanations were believable, and that despite the initial appearance of racial motivation, the State's peremptory challenges were not racially motivated.

■ We first conclude that the prosecutor's representations provided racially neutral explanations for the State's peremptory strikes that were sufficient to overcome the presumption of racial discrimination. At that point, it was appellant's burden to persuade the trial judge, by a preponderance of the evidence, that the allegations of purposeful discrimination were true in fact and that the prosecutor's reasons were merely a sham or pretext. *Tompkins,* 774 S.W.2d at 202; *Keeton,* 749 S.W.2d at 868.

■ After the State made such neutral explanations, appellant's counsel did not seek to cross-examine the prosecutor regarding his explanations, and even declined the court's suggestion that he do so. Neither did appellant's counsel offer any con-

tradictory evidence to impeach the prosecutor's statements. Appellant merely challenged the accuracy of the prosecutor's statements regarding some of the responses given by the venirepersons.

The record shows that the trial court made a conscious effort to ascertain the validity of appellant's allegations of racial discrimination. At one point, the court admonished appellant's counsel that he would have to "ask some questions" because the court could not possibly remember what every venireperson had said. To this admonishment, counsel simply responded that he (appellant's counsel) likewise could not remember what each venireperson had said, and that the record would have to stand "as to what the jurors said."

■ It was appellant's burden at trial to persuade the trial court, by a preponderance of the evidence, of the validity of his allegations of the State's purposeful discrimination. To do this, appellant was required to show that the prosecutor's explanations were merely a sham or pretext. *Tompkins,* 774 S.W.2d at 202; *Keeton,* 749 S.W.2d at 868. Thus, after the prosecutor's racially-neutral explanations, appellant was required to establish, by cross-examination or contradictory evidence, that such explanations were false or inaccurate. *Gardner v. State,* 782 S.W.2d 541, 545 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). It was appellant's burden to do more than simply state his disagreement with some of the prosecutor's explanations; he was required to prove affirmatively that the prosecutor's racially neutral explanations were a sham or a pretext.

■ In reviewing the record, we must consider the evidence in the light most favorable to the trial court's rulings. *Keeton,* 749 S.W.2d at 870. We must also give great deference to the trial court's findings, and we may not substitute our judgment for that of the trial court regarding

---

5. The record reflects that the prosecutor asked venireperson Carroll if she would have a tendency to believe a police officer more than she would an ordinary citizen. She responded: "it depends on what they're telling me." Earlier, venireperson Carroll had been asked: "if a po-

lice officer were to testify, would you doubt their credibility?" She answered this question in the negative. Thus, there is some inconsistency between the venireperson's verbal responses and the prosecutor's explanation.

the credibility or the weight to be given a witness' testimony. *Gardner*, 782 S.W.2d at 544.

Here, the prosecutor gave racially-neutral explanations that were based on both verbal and nonverbal responses, and on the general demeanor of the venirepersons. Although defense counsel did argue to the court that he believed some portions of the prosecutor's explanations were inconsistent with the responses given by the venirepersons, he did not cross-examine the prosecutor with respect to those matters or otherwise seek to discredit such explanations by any contradictory evidence.

 A challenge to a juror may be based upon the manner in which the juror reacts to defense counsel, as well as upon the juror's verbal statements in the record. *Gardner*, 782 S.W.2d at 544; *see also York*, 764 S.W.2d at 331. The State may also base its peremptory strikes on the prosecutor's legitimate "hunches" and past experience, as long as such strikes are not racially motivated. *York*, 764 S.W.2d at 331. Thus, even though there may be some inconsistency between the prosecutor's explanations and the venireperson's verbal responses, such inconsistency does not compel a conclusion that the prosecutor's explanations, considered in their entirety, were merely a sham or pretext.

After considering the evidence in the light most favorable to the trial court's ruling, we find the court did not abuse its discretion in denying appellant's objection to the jury panel. The fifth point of error is overruled.

The judgment of the trial court is affirmed.

O'CONNOR, J., not participating.