Monsour MUHAMMAD, Appellant

v.

The STATE of Texas, Appellee.

No. 06–95–00039–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 16, 1995.

Decided Nov. 16, 1995.

Kathi Alyce Drew, Dallas, for Appellant.

Sue Korioth and Michael J. Sandlin, Assistant District Attorneys, Dallas, for Appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Monsour Muhammad appeals from his conviction in a jury trial for the offense of murder. The undisputed evidence shows that Monsour Muhammad shot and killed Sandra Knight, a drug dealer. He was convicted of murder and sentenced to ninety-nine years' imprisonment.

Muhammad brings seven points of error in which he alleges that *Batson* [1] error occurred during voir dire of the jury and that the trial court erred by failing to make written findings of fact in regard to his motion to suppress statements during custodial interrogation, by overruling his motion to suppress the

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

confessions, and by admitting an unadjudicated extraneous offense into evidence at the punishment phase of the trial. He also contends that the evidence is factually insufficient to support the jury's determination of guilt because the evidence conclusively establishes either self-defense or voluntary manslaughter.

We first address Muhammad's contention of *Batson* error. Muhammad argues that the trial court erred by finding that the State offered race-neutral reasons for its peremptory strikes of the jurors involved. In our review of the court's decision, we must accept that finding unless we determine that it is clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707 (Tex.Crim.App.1989) (on rehearing). Under the clearly erroneous standard, we are to accept the trial court's account of the evidence if it is plausible in light of the record as viewed in its entirety. Moreover, because a determination of purposeful discrimination usually depends on an assessment of the credibility of witnesses, the content of the explanation, and all other relevant surrounding facts and circumstances, the trial court's determination is entitled to great deference. *Alexander v. State*, 866 S.W.2d 1 (Tex.Crim.App.1993).

Although racial bias cannot be automatically imputed in every situation where one of the State's reasons for using a peremptory challenge would technically apply to another member of the venire the State found to be acceptable, it can be imputed when there is disparate treatment of the venire members as to the sole reason or primary reasons stated for the exercise of the peremptory challenge. *Esteves v. State*, 849 S.W.2d 822 (Tex.Crim.App.1993). The improper exclusion of even one member of the defendant's race for discriminatory reasons invalidates the entire process. *Whitsey*, 796 S.W.2d at 707.

Muhammad contends that two specific jurors were improperly struck by the State. Juror twenty-two was a black female, and juror forty-five was a black male. At a hearing on the defendant's *Batson* motion, the trial court asked the prosecutor to explain his reason for striking these jurors. The prosecutor testified he struck juror twenty-two because she had a cousin who went to the penitentiary for commission of the same type of crime being tried in this case and because she was sleeping. He also noted that he had struck another juror who had family in prison.

The prosecutor also testified he struck juror forty-five because he slept during the judge's voir dire, during his voir dire, and during the defense attorney's voir dire. He further noted that this juror failed to fill out his juror information card in numerous respects and that there was no indication that he had any roots in the community. He thus doubted that this would be a conscientious juror in the present case.

Defense counsel responded by noting that the relative who went to prison for murder was incarcerated when juror twenty-two was just a baby. He also questioned the State's comments that the jurors were sleeping. These comments, however, were confirmed by the trial court. Standing alone, the mere fact that both of these jurors were described as sleeping during voir dire constitutes a racially neutral reason for striking a prospective juror. *Irvine v. State*, 857 S.W.2d 920, 926 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd); *see Roberson v. State*, 866 S.W.2d 259, 261 (Tex.App.—Fort Worth 1993, no pet.); *Solomon v. State*, 830 S.W.2d 636, 637 (Tex.App.—Texarkana 1992, pet. ref'd).

Considering this evidence in the light most favorable to the trial court's ruling, it appears that no purposeful discrimination was shown in this case. This point of error is overruled.

Muhammad next contends the trial court committed reversible error by failing to make written findings of fact and conclusions of law on his suppression hearing, and alternatively argues that this Court should abate the proceeding to the trial court so that such findings and conclusions can be properly entered. Such findings and conclusions are mandatory under Tex.Code Crim.Proc.Ann. art. 38.22, § 6 (Vernon 1979). They require the trial court to file its findings regardless of whether the defendant does or does not object. *Green v. State*, 906 S.W.2d 937 (Tex. Crim.App.1995). Based upon the Court of

Criminal Appeals' opinion in *Green,* and its unambiguous directive that such findings must be filed while the trial court has jurisdiction over the case, we abated this cause on October 12 with directions to the trial court to file such findings of fact and conclusions of law within fifteen days and return the record thereof to this Court.[2] The findings have now been filed with this Court. This point of error is now moot.

 Muhammad also contends that the trial court erred by overruling his motion to suppress his confession. On a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and is the judge of the credibility of the witnesses, including the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). This Court does not engage in its own factual review, but determines whether the trial judge's findings are supported by the record. If they are supported, this Court is not at liberty to disturb them. *Etheridge v. State,* 903 S.W.2d 1 (Tex.Crim.App.1994); *Upton v. State,* 853 S.W.2d 548 (Tex.Crim. App.1993).

Muhammad argues that the officer who took his confession improperly told him that his statement could be used for him. It has been held improper to inform a defendant that his statement could be used for him because this would constitute a form of inducement to make the statement. *See Espinosa v. State,* 899 S.W.2d 359, 363 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). The Court of Criminal Appeals has held that whenever the accused's testimony reflects that he was unlawfully caused to make a written confession because an officer gave him erroneous information about the use of his statement, and his testimony was uncontradicted, then the accused's written confession was inadmissible as a matter of law. *Moore v. State,* 700 S.W.2d 193, 202 (Tex. Crim.App.1985), *cert. denied,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986); *Espinosa,* 899 S.W.2d at 362. These cases are based upon the rationale set out in *Unsell v. State,* 39 Tex.Crim. 330, 45 S.W. 1022, 1023

(1898), in which the Court held that to warn a defendant that his statement might be used for him would be holding out an inducement.

In the present case, the detective testifies as follows:

Q I take it you did tell him that the statement could be used either for him or against him?

A Yes, sir.

Q In other words that it could either help him or hurt him in his trial either one way or the other?

A Yes, sir. I read all the warnings that are on the beginning of the statement to him.

Q Did you assure him that if he told the truth in the statement that that could help him in his trial?

A No, I didn't. No, I just approached the Defendant and asked—I said I wanted to get his side of what happened. I didn't promise him anything in terms of whether he would receive leniency or—

Q But you did tell him that it could be used for him or against him?

A Yes, sir, I advised him of those.

The trial judge made two findings concerning this matter:

### IV

The Court finds beyond a reasonable doubt that on September 23, 1994, Detective Rathjen read aloud the Miranda Warnings to the defendant from a card, State's Exhibit 1–B, exactly as they are printed on State's Exhibit number 1–B and therefore, the warnings given to the defendant did not include the phrase, "for or against."

### V

The Court finds beyond a reasonable doubt that Detective Rathjen also read aloud to the defendant the pre-printed Miranda warnings at the top of the voluntary

---

**2.** The trial court did file findings of fact and conclusions of law. However, it filed those findings with the district clerk after the record had been filed in this Court. At that point, the trial court had no jurisdiction to act in any regard in this case. Under *Green* and the cases cited therein, any such act must be considered void. We therefore abated the cause so that the trial court could file the orders again and send this Court a supplemental transcript containing the orders.

statement, State's Exhibit number 1–A, and therefore, the warnings given to the defendant did not include the phrase, "for or against."

▮ The testimony of Detective Rathjen was interpreted by the trial court to indicate that he read Muhammad the warnings that appear in writing at the beginning of the statement signed by Muhammad, that Detective Rathjen may have been confused about exactly what those warnings said at the time he was testifying, and that the gist of his testimony was that he gave the written warning as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 38.22 of the Code of Criminal Procedure. These written warnings were a part of the evidence in the case and included only that the statement could be used against the party making the statement. The officer's testimony and the statement in evidence are sufficient to support the findings of the trial court.

▮ Even if the court's finding that the officer had not used the "for or against" language had no support in the record, under state law a promise will render a confession involuntary and inadmissible only if it (1) is of some benefit to the accused; (2) is positive; (3) is made or sanctioned by a person in authority; and (4) is of such a character as would likely influence the accused to speak untruthfully. *Smith v. State*, 779 S.W.2d 417, 427 (Tex.Crim.App.1989); *Washington v. State*, 582 S.W.2d 122, 124 (Tex.Crim.App. 1979); *Espinosa*, 899 S.W.2d at 362.[3]

▮ We fail to perceive in what way a promise that a statement confessing murder might be used for or against a defendant, without more, would operate to induce an accused falsely to inculpate himself by confessing to a crime he had not committed. *Washington v. State*, 582 S.W.2d at 124. The trial court did not err by admitting the statement into evidence.

Muhammad next contends that the trial court erred by admitting evidence of an unadjudicated extraneous offense during the punishment phase of the trial. The sole line of argument addressed under this point of error is that the extraneous offense was not relevant to sentencing in this case.

Don Alexander testified that he had gotten into a fight with Muhammad following a dice game in which Alexander had won money from Muhammad. In the fight, Muhammad broke Alexander's arm and stole $500. Alexander signed an affidavit of nonprosecution and dropped the charge against Muhammad. Alexander testified he had dropped the charges to give Muhammad a second chance and also testified that he had himself been to prison three times.

Article 37.07, § 3(a) provides:

[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1995).

▮ Muhammad suggests that under the definition of relevant evidence provided by TEX.R.CRIM.EVID. 401, this unadjudicated extraneous offense is not relevant to the sentencing process.[4] The statute expressly declares certain matters to be relevant to sentencing, including "an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant." Muhammad is thus confronted with the pronouncement of the Texas Legislature that precisely this type of evi-

---

**3.** We acknowledge the apparent division in authority discussed in *Espinosa*. We join the Houston court in holding that the four-prong test set out by *Smith* is sufficient to protect the rights of defendants as well as to provide proper administration of justice in this context.

**4.** TEX.R.CRIM.EVID. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

dence is relevant to sentencing. *See Smith v. State*, 899 S.W.2d 31, 33 (Tex.App.—Austin 1995, no pet.). Counsel has not attacked the constitutionality of the statute. No error has been shown.

Muhammad next contends that the evidence is factually insufficient to convict him of murder because the evidence conclusively establishes that he shot the victim only in self-defense. The jury was charged on the issue of self-defense. In reviewing the factual sufficiency of the evidence, we look at all of the evidence and determine whether the conviction is against the great weight of the evidence.[5] *See Bigby v. State*, 892 S.W.2d 864 (Tex.Crim.App. 1994). The trier of fact is free to accept or reject any or all of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim.App.1992); *Green v. State*, 892 S.W.2d 217, 218 (Tex.App.—Texarkana 1995, no pet.).

Counsel for the appellant suggests that self-defense is an affirmative defense and that the burden of proof therefore shifted to the defendant to prove his defense by a preponderance of the evidence.[6] Self-defense is not an affirmative defense. *Saxton v. State*, 804 S.W.2d 910, 912 n. 5 (Tex.Crim. App.1991); *Green v. State*, 891 S.W.2d 289, 296 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *but see Nance v. State*, 807 S.W.2d 855, 864 (Tex.App.—Corpus Christi 1991, pet. ref'd).

If sufficient proof that Muhammad acted in self-defense was brought before the jury, it would be required to acquit him since the Penal Code provides that self-defense is an absolute defense to the prosecution. If the issue of the existence of a defense is submitted to the jury, the court must charge that a reasonable doubt on the issue requires the jury to acquit the defendant. Tex.Penal Code Ann. § 2.03(d) (Vernon 1994).

Muhammad testified that he only shot the victim after he had struck her several times, picked her up by the throat, and slammed her against the wall—and after he became afraid that she was reaching for a derringer that he testified she kept hidden in the left side of her shorts. No derringer was found at the scene, and two witnesses testified that she did not have such a gun. In addition, one of the two eyewitnesses to the murder testified that Muhammad could have left after he hit her the first time, knocking her into a corner. The evidence of self-defense is not so compelling as to make his conviction for the offense of murder against the great weight of the evidence. This point of error is overruled.

Muhammad next contends that the evidence is factually insufficient to convict him of murder because the evidence established voluntary manslaughter. The jury was charged on this issue. When the evidence raises sudden passion, the absence of the influence of sudden passion becomes an element of murder that the State must prove beyond a reasonable doubt. *Ruiz v. State*, 753 S.W.2d 681, 683 (Tex.Crim.App.1988); *Corral v. State*, 900 S.W.2d 914, 919 (Tex. App.—El Paso 1995, no pet.). When the evidence raises the issue of sudden passion, the State bears the burden of negating it beyond a reasonable doubt as an element of murder. *Bradley v. State*, 688 S.W.2d 847, 851 (Tex.Crim.App.1985); *Locke v. State*, 860 S.W.2d 494, 495 (Tex.App.—Waco 1993, pet. ref'd).

Although defense counsel argues that this is actually in the nature of an affirmative defense, this argument is not supported by case law. Rather, counsel suggests that the extant rules of decision should be changed and that concept of sudden passion should be treated as an affirmative defense. Although the amended version of the Penal Code does provide that voluntary man-

---

**5.** The Texas Constitution declares that the courts of appeals are conclusive on all fact questions and have the constitutional authority and obligation to determine whether the evidence is factually sufficient to sustain a judgment. *Green v. State*, 892 S.W.2d 217, 218–19 (Tex.App.—Texarkana 1995, no pet.); *Lisai v. State*, 875 S.W.2d 35 (Tex.App.—Texarkana 1994, pet. ref'd); *see Stone v. State*, 823 S.W.2d 375, 377 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). *Contra*

*Clewis v. State*, 876 S.W.2d 428 (Tex.App.—Dallas 1994, pet. granted); *Mares v. State*, 903 S.W.2d 419, 423 (Tex.App.—Eastland 1995, pet. ref'd).

**6.** The Dallas Court of Appeals has refused to adopt the position taken by this Court that factual sufficiency is an appropriate review under the Texas Constitution in criminal cases.

slaughter is an affirmative defense, TEX.PE-NAL CODE ANN. § 19.02(a)(d) (Vernon 1994), it applies only to offenses occurring after September 1, 1994. The previous versions of the Penal Code did not list this theory as an affirmative defense.

The offense date in this case was July 4, 1994. In the applicable version of the Penal Code, sudden passion is defined as passion "directly caused by and arising out of provocation by the individual killed or another acting with the person killed, which passion arises at the time of the offense and is not solely the result of former provocation." Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974.[7]

Muhammad argues that he conclusively proved his contention of sudden passion and that the jury therefore erred in making the implied finding that he had not been under the influence of sudden passion at the time that he committed the murder.

■■■ Muhammad testified that he was furious at the victim because she had called him obscene names and questioned his manhood and made statements disrespectful of his person. He used this reasoning as an excuse for pistol whipping her and holding her by the throat up against the wall. However, he also testified that the reason that he shot her was because he was afraid that she was pulling a gun to shoot him. Thus, although the defendant's own testimony provides some support for his theory of self-defense, it directly refutes his contention that he killed her under the influence of sudden passion arising from an adequate cause. *See Acosta v. State,* 742 S.W.2d 287, 288 (Tex. Crim.App.1986). The evidence is sufficient to support the jury's finding that he did not act under the influence of sudden passion, and the evidence to the contrary is not so strong as to make this determination against the great weight and preponderance of the evidence. This point of error is overruled.

The judgment of the trial court is affirmed.

---

7. Amended by Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3613, current version found at TEX.PENAL CODE ANN. § 19.02 (Vernon 1994).