Affirmed and Memorandum Opinion filed August 24, 2010.

 

In
The

Fourteenth
Court of Appeals



NO.  14-08-01079-CR



Broderick
D'Earl Williams, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 339th District Court

Harris County, Texas

Trial Court
Cause No. 1169371



 

MEMORANDUM  OPINION

            A
jury convicted appellant, Broderick D’Earl Williams, of burglary of a
habitation with intent to commit aggravated robbery and sentenced him to
eighteen years’ confinement in the Institutional Division of the Texas
Department of Criminal Justice.  See Tex. Penal Code Ann. § 30.02(a)(1)
(Vernon 2003).  Appellant contends  the trial court erred by: (1) denying
appellant’s pretrial motion to dismiss on double jeopardy grounds and (2)
overruling appellant’s Batson challenge.  We affirm.

Factual and
Procedural Background

On December 5, 2006, appellant and a friend broke
into the complainant’s home and robbed the family at gunpoint.  Eventually, the
family members were able to escape through the master bathroom window.  Once
the complainant was able to escape from appellant’s control, he called 9-1-1. 
The police arrived shortly thereafter and found appellant’s friend in a vehicle
in the complainant’s driveway.  The complainant was taken to the emergency
room, as appellant had hit him in the eye with a gun.  Appellant’s friend
informed the police of appellant’s name and whereabouts.  Police arrested
appellant later that day.    

On May 23, 2008, in a proceeding separate from the
instant case, appellant pleaded guilty to the offense of aggravated robbery
based on the events of December 5, 2006.  Appellant elected to have the jury
assess punishment and he was sentenced to ten years’ probation.  Appellant did
not appeal the conviction because he thought it was “the best thing he could
get” and he did not want to prolong the start of his probation time.  On June
2, 2008, appellant was indicted for burglary of a habitation with intent to
commit aggravated robbery based on the events of December 5, 2006—the charge
eventually giving rise to the instant appeal.  Appellant filed a motion to
dismiss based on double jeopardy.  The trial court denied appellant’s motion to
dismiss and the case went to trial before a jury.  

At the end of voir dire, appellant made a Batson
challenge, alleging the State illegally struck six of eight African-American
venire members.  See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 90
L. Ed. 2d 69 (1986).  The State responded to the challenge with reasons for its
strikes.  The trial court denied the Batson challenge.  

The jury convicted appellant of burglary of a
habitation with intent to commit aggravated robbery and sentenced him to
eighteen years’ confinement in the Institutional Division of the Texas
Department of Criminal Justice.  Appellant timely filed this appeal.

Discussion

Appellant contends the trial court erred by (1)
denying his motion to dismiss based on double jeopardy grounds and (2) denying
his Batson challenge.  Specifically, appellant argues the trial court
erred in denying his motion to dismiss because (1) the charge violates his
double jeopardy rights and (2) the State brought the charge out of
prosecutorial vindictiveness. 

I.         Double
Jeopardy Argument

            A.        Applicable
Law

            The
Double Jeopardy Clause of the Fifth Amendment, applicable to the states through
the Fourteenth Amendment, protects an accused against a second prosecution for
the same offense for which he has been previously acquitted or previously
convicted.  Littrell v. State, 271 S.W.3d 273, 275 (Tex. Crim. App.
2008) (citing Brown v. Ohio, 432 U.S. 161, 164–65, 97 S. Ct. 2221, 53 L.
Ed. 2d 187 (1977)).  It further protects an accused from being punished more
than once for the same offense.  Id. at 165.  Appellant contends he is
being prosecuted twice for an offense for which he was previously convicted and
that he is being punished more than once for the same offense.  In the multiple-punishment
and multiple-prosecution contexts, the double jeopardy bar applies if the two
offenses for which the defendant is punished or tried cannot survive the “same elements”
or “BlockburgerI” test.  U.S. v. Dixon, 509 U.S. 688, 696, 113 S.
Ct. 2849, 125 L. Ed. 2d 556 (1993); see Blockburger v. United States,
284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); see Watson v. State,
900 S.W.2d 60, 61–62 (Tex. Crim. App. 1995).  The “same elements” test inquires
whether each offense contains an element not contained in the other.  Watson,
900 S.W.2d at 61.  If the second offense contains an element not found in the
first offense, then double jeopardy protections are not violated.  

            B.        Analysis

             Appellant
urges us to apply Littrell v. State.  Littrell, 271 S.W.3d at 273.
 In that case, the Court of Criminal Appeals held the defendant’s double
jeopardy rights were violated when the trial court authorized a jury to convict
and punish the defendant for both felony murder and the underlying aggravated robbery
offense.  Id. at 279.  The Court reasoned the first count, felony
murder, required showing the defendant committed an act clearly dangerous to
human life that caused death during the commission or attempted commission
of an aggravated robbery.  Id. at 276.  While the second count only
required proving the commission of an aggravated robbery.  Id at
276–77.  Because the first count subsumed all the elements of the second count,
the Court found aggravated robbery was a lesser-included offense of count one,
felony murder, for double jeopardy purposes.  Id. at 277.  Accordingly,
the Court allowed only a single conviction for the criminal transaction.  The
dissent argued that the first offense was different for double jeopardy
purposes because the second offense requires proof of commission and the
jury could have found appellant attempted to commit aggravated robbery
in the first offense.  Id. at 279–80.  The majority responded by noting,
“as a matter of statutory law in Texas, the attempt to commit an aggravated
robbery is itself a lesser-included offense of the commission of aggravated
robbery.”  Id. at 277 n.18.     

            Littrell
is distinguishable from the case at bar.  The greater offense in the
instant case is burglary of a habitation with intent to commit aggravated
robbery; while the lesser offense (for which appellant was previously
convicted) is aggravated robbery.  The greater offense required showing intent
to commit aggravated robbery, while the lesser offense required showing commission
of the aggravated robbery.  Compare Tex. Penal Code Ann. § 30.02(a)(1)
(Vernon 2003) with Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003).  In
Littrell, the greater offense required proving commission or attempted
commission of the lesser offense and the lesser offense required proof of commission;
whereas, here, the greater offense requires proof of intent to commit
the lesser offense and the lesser offense requires proof of commission.   

            The
Court of Criminal Appeals has held that aggravated assault is not a
lesser-included offense of burglary with the intent to commit aggravated
assault.  Jacob v. State, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995).  The
Court stated: 

[w]hile it may be true that when the State proves an
aggravated assault, the proof shows an intent to commit the assault, under
Article 37.09(1) facts showing a completed assault are not “required” to prove
intent to commit such assault.  Intent to commit requires less proof.  While it
certainly may be used to show that intent, it is not legally required
because intent to commit can be established by facts showing something less than
commission of the offense.  

Id. 
The Jacob court’s reasoning is applicable here.  In the current case,
appellant was charged with unlawfully entering the habitation of another
without consent and with intent to commit aggravated robbery.  Therefore, the
State was only required to prove intent to commit aggravated robbery and not
the commission of an aggravated robbery—while the underlying offense required
proof of commission.  Thus, the “same elements” of the Blockburger test are
not met here because each charge requires proof of an element not required
under the other.  Accordingly, there has been no violation of appellant’s
double jeopardy rights.  Appellant’s contentions regarding double jeopardy are
overruled.       

II.        Prosecutorial
Vindictiveness Argument

            On
appeal, appellant brings his prosecutorial vindictiveness claim as a sub-part
of his double jeopardy claim.  However, we have determined it should be
addressed separately.  Appellant argues the State was motivated to bring a
second charge against appellant because of the State’s purported disappointment
in the probated sentence resulting from the first charge.

            Generally,
prosecutors have broad discretion to decide what charges to file against a
criminal defendant.  Neal v. State, 150 S.W.3d 169, 173 (Tex. Crim. App.
2004).  That discretion is not without limits, however.  Ex Parte Legrand,
291 S.W.3d 31, 41 (Tex. App.—Houston [14th Dist.] 2009, pet. ref’d).  For
example, a prosecutor may not increase the charges against a defendant simply
as a punishment for invoking a right, such as pursuing an appeal.  Id. 
“To punish a person because he has done what the law plainly allows him to do
is a due process violation ‘of the most basic sort.’”  United States v.
Goodwin, 457 U.S. 368, 372 (1982) (citation omitted).  One who has been
convicted of an offense must be entitled to pursue his appellate rights without
fear that the government will retaliate by substituting a more serious charge
for the initial one.  Blackledge v. Perry, 417 U.S. 21, 28 (1974).  The
United States Supreme Court has held that, under specific, limited
circumstances, the presumption that a prosecution is undertaken in good faith
gives way to a rebuttable presumption either of prosecutorial vindictiveness or
proof of actual vindictiveness.  See Goodwin, 457 U.S. at 373.  A
constitutional claim of prosecutorial vindictiveness may be established in
either of two distinct ways: (1) proof of circumstances that pose a “realistic
likelihood” of such misconduct sufficient to raise a “presumption of
prosecutorial vindictiveness,” which the State must rebut or face dismissal of
the charges; or (2) proof of “actual vindictiveness”—that is, direct evidence
that the prosecutor’s charging decision is an unjustifiable penalty resulting
solely from the defendant’s exercise of a protected legal right.  Neal,
150 S.W.3d at 173 (citing Goodwin, 457 U.S. at 380–81).

            Under
the first prong, if the State pursues increased charges or an enhanced sentence
after a defendant is convicted, exercises his legal right to appeal, and
obtains a new trial, the Supreme Court has found a presumption of prosecutorial
vindictiveness.  Id.  In the very few situations in which this
presumption does apply, it can be overcome by objective evidence in the record
justifying the prosecutor’s action.  Id. at 173–74.  The defendant must
prove that he was convicted, he appealed and obtained a new trial, and that the
State thereafter filed a greater charge or additional enhancements.  Id.
at 174.  The burden then shifts to the prosecution to come forward with an
explanation for the charging increase that is unrelated to the defendant’s
exercise of his legal right to appeal.  Id.  The trial court decides the
issues based upon all of the evidence, pro and con, and the credibility of the
prosecutor’s explanation.  Id.  

            Under
the second prong, when the presumption does not apply, the defendant may still
obtain relief if he can show actual vindictiveness.  Id.  To establish
that claim, a defendant must prove, with objective evidence, that the
prosecutor’s charging decision was a “direct and unjustifiable penalty” that
resulted “solely from the defendant’s exercise of a protected legal right.”  Id. 
Under this prong, the defendant shoulders the burden of both production and
persuasion, unaided by any legal presumption.  Id.  Once again, the
trial judge decides the ultimate factual issue based upon the evidence and
credibility determinations.  Id. at 174–75.    

            Both
routes to proving prosecutorial vindictiveness require the defendant to
exercise a protected legal right.  Because appellant failed to exercise a
protected legal right, his claim of prosecutorial vindictiveness fails. 
Appellant argues he did not appeal his probated sentence because he believed
“it was the best he could get.”  Probation is a privilege and not a right.  Speth
v. State, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999).  Accordingly,
appellant’s contention regarding prosecutorial vindictiveness is overruled.   

III.      Batson Challenge


            A.        Standard
of Review 

            When
reviewing a Batson claim, the appellate court must determine whether the
trial court’s findings are clearly erroneous.  Esteves v. State, 849
S.W.2d 822, 823 (Tex. Crim. App. 1993).  This determination is made by applying
a “clear error” standard of review.  Vargas v. State, 838 S.W.2d 552,
554 (Tex. Crim. App. 1992).  We apply this standard by reviewing the record,
including the voir dire and the racial makeup of the venire; the prosecutor’s
race neutral explanation; and appellant’s rebuttal and impeaching evidence.  Id. 
The trial court’s determination is granted great deference and will not be
overturned unless it is clearly erroneous.  Chambers v. State, 866
S.W.2d 9, 23 (Tex. Crim. App. 1993).  “If the district court’s account of the
evidence is plausible in light of the record viewed in its entirety, the court
of appeals may not reverse it even though convinced that had it been sitting as
the trier of fact, it would have weighed the evidence differently.  Where there
are two permissible views of the evidence, the fact-finder’s choice between
them cannot be clearly erroneous.”  Vargas, 838 S.W.2d at 556 (quoting Whitsey
v. State, 796 S.W.2d 707, 722 (Tex. Crim. App. 1990)).  

            B.        Applicable
Law

            In
a Batson challenge, the moving party must first make a prima facie case
showing the striking party exercised its peremptory challenge on the basis of
race.  Purkett v. Elem, 514 U.S. 765, 767 (1995); Contreras v. State,
56 S.W.3d 274, 278 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d); see
also Code Crim. Proc. Ann. art. 35.261 (Vernon 2009).  The burden then
shifts to the striking party to provide a race-neutral explanation for the
strike.  Purkett, 514 U.S. at 767, 115 S. Ct. at 1770–71.  If the
striking party articulates a race-neutral explanation, the moving party is
given an opportunity to respond, since that party has the ultimate burden of
proving purposeful discrimination.  Id.; Wamget v. State, 67
S.W.3d 851, 858 (Tex. Crim. App. 2001).  Finally, the trial court must
determine whether the moving party met the burden of purposeful
discrimination.  Purkett, 514 U.S. at 767.

            C.        Analysis

            The
State used six peremptory strikes to remove six of the eight remaining African
American venire members.  Appellant brought a Batson challenge contending
there could be no race neutral reasons for these six strikes.  The trial court
then asked the State whether it had a response.  The State offered an
explanation for each of the six strikes.  

            As
to its first strike, the State explained that venire member 10 “got an
attitude” when another panel member said he believed appellant was “a little
guilty.”  Dislike of a venire member’s attitude, albeit facially race neutral, is
an intangible excuse which is properly evaluated by the trial judge, who was
present to witness the conduct of the venire member and to assess the
credibility of the prosecutor and his explanation.  Ingram v. State, 978
S.W.2d 627, 630 (Tex. App.—Amarillo 1998, no pet.).  Furthermore, because
attitude is not a characteristic that is peculiar to any race, it is race
neutral.  Id. (citing Purkett v. Elem, 514 U.S. at 768–69). 

            Regarding
its second, fourth, fifth, and sixth strikes, the State explained it struck
these venire members because they stated they were unable to consider assessing
the maximum sentence.  Strikes based on an inability to assess the maximum
sentence have also been found to be race neutral.  See Watkins v. State,
245 S.W.3d 444, 453 (Tex. Crim. App. 2008). 

            In
explaining its third strike, the State explained it was concerned because the
venire member was sleeping during the voir dire.  Sleeping during voir dire has
been held as a race neutral reason.  See Muhammad v. State, 911 S.W.2d
823, 825 (Tex. App.—Texarkana 1995, no writ) (holding that the strike of a venire
member due to sleeping during voir dire is a race neutral reason). 

            After
the State explained the race neutral reasons for its strikes, the burden
shifted back to appellant to persuade the trial judge purposeful discrimination
existed beyond a preponderance of the evidence.  To do so, appellant was
required to show that the State’s explanations were merely a pretext for discrimination.
 Straughter v. State, 801 S.W.2d 607, 613 (Tex. App.—Houston [1st Dist.]
1990, no writ).  Ultimately, it was the appellant’s burden to persuade
the trial court that the State’s explanations were incredible or disingenuous.  Watkins,
245 S.W.3d at 457.  Appellant could have rebutted these explanations or
questioned the State about them.  However, appellant only asked for the jury forms
to be preserved in the record.  

            The
trial court did not err in denying appellant’s Batson challenge.  See
Straughter, 801 S.W.2d at 614 (affirming the trial court’s denial of defendant’s
Batson claims where appellant failed to cross-examine the State or
otherwise seek to discredit the explanations by contradictory evidence). 
Accordingly, we overrule appellant’s second issue.  

Conclusion

            Having
overruled all of appellant’s issues, we affirm the trial court’s judgment.  

 








                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Frost, and Seymore.

Do
Not Publish — Tex. R. App. P. 47.2(b).