**Dwain ALLEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00461–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 26, 1988.

**932**

John Joseph Cascone, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Lynn Parson, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and SAM BASS and COHEN, JJ.

## OPINION

SAM BASS, Justice.

A jury found appellant guilty of aggravated robbery, and assessed punishment at 57 years confinement and an $8,000 fine.

We affirm.

Appellant does not contest the sufficiency of the evidence.

In his first two points of error, appellant contends that the trial court erred in denying his request for a *"Batson"* hearing (*see Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)) and his motion to strike the jury panel. Appellant alleged that, through its use of peremptory strikes, the State engaged in the "systematic exclusion of members of appellant's racial group" from the jury.

Following voir dire, but prior to the jury's empanelling, appellant objected to the composition of the panel and requested a *Batson* hearing. Appellant contends that the trial court initially refused to conduct the hearing and, instead, instructed appellant to make any objections to the bench. The record reflects, however, that a hearing took place, and that the trial court determined that appellant had failed to raise a *prima facie Batson* claim. The

trial court overruled appellant's objections and dismissed the parties for the day.

The following day, the trial court *sua sponte* reopened the *Batson* hearing, allowed the prosecutor to be sworn, and proceeded to hear her rebuttal to appellant's allegations. The trial court stated that it took "judicial notice" of all statements made by defense counsel the previous day. After the prosecutor had produced its explanations, and appellant had raised arguments to negate these explanations, the trial court concluded that the State had provided adequate, neutral reasons for its exercise of peremptory strikes and overruled appellant's motion to strike.

In his first point of error, appellant contends that the trial court's actions did not amount to a proper hearing and that, therefore, the trial court improperly denied his motion for a *Batson* hearing. Appellant cites no caselaw in support of this argument. Furthermore, the record reflects that a full *Batson* hearing occurred. We find that the trial court did, in fact, hold a *Batson* hearing.

Appellant also contends that the trial court erred in reopening the *Batson* issue. Tex.Code Crim.P.Ann. art. 36.02 (Vernon 1981) states, "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." *See Holcomb v. State,* 523 S.W.2d 661, 662 (Tex.Crim.App. 1975); *Stout v. State,* 500 S.W.2d 153, 154 (Tex.Crim.App.1973).

In *Keeton v. State,* 724 S.W.2d 58, 66 (Tex.Crim.App.1987) (*"Keeton I"*), the Court of Criminal Appeals remanded a case for a *Batson* hearing nearly nine months after the original trial. Thus, it would appear that a delay between an appellant's assertion of a *Batson* claim and a full hearing on this claim is not, in and of itself, a violation of due process. The trial court simply afforded the State the opportunity to offer rebuttal testimony to what it heard the previous day. The trial court then afforded appellant an additional occasion to tender further evidence of purposeful discrimination.

▆ Appellant further contends that the trial court's decision harmed him by denying him the opportunity to call witnesses that he would have called had the trial court granted his motion the previous day. However, the record does not reflect any attempt by appellant to offer the alleged witnesses; neither does it reflect a request or motion for continuance in order to obtain those individuals that he felt were needed, nor a bill of exceptions to preserve for the record the substance of the testimony that these witnesses allegedly would have provided. *See Stewart v. State*, 686 S.W.2d 118, 122 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985); *Lindley v. State*, 635 S.W.2d 541, 544 (Tex.Crim.App.1982). Although under certain circumstances the trial court's action might constitute an abuse of discretion, in the instant case, appellant has not established that the trial court did anything other than that "necessary to the due administration of justice."

We overrule appellant's first point of error.

In his second point of error, appellant contends that the trial court erred in overruling his motion to strike the jury panel. Specifically, he alleges that the State systematically excluded members of his race from serving on the jury by using its peremptory challenges in an illegally discriminatory manner.

On the first day of trial, appellant and the prosecutor conducted a voir dire examination of a 40–person venire. The trial court excused four members of the jury panel for cause. Six of the remaining prospective jurors were black. In its exercise of 10 peremptory strikes, the prosecutor struck four of the six black veniremen.

After both parties had exercised their peremptory challenges, and before the panel was sworn, appellant objected to the racial composition of the jury. During the *Batson* hearing, appellant established that he was black and that four of the State's 10 peremptory strikes were used to remove black members of the venire. Appellant offered no other testimony in support of his *Batson* claim.

The prosecutor responded by stating that two of the 12 members of the jury were black and that, for this and other reasons, appellant had failed to make a *prima facie* claim. After further discussion, the court overruled appellant's objection and recessed for the evening. Upon reconvening the next day, however, the trial court reopened the hearing and heard the prosecutor's explanations about the reasons why she had exercised each of her peremptory strikes as she did.

We assume, without deciding, that the trial court found that appellant had made a *prima facie* case because it required the State to produce neutral reasons about the use of its peremptory strikes. After the State had produced explanations of all its peremptory strikes, the trial court denied appellant's motion to strike the jury panel.

In answer to appellant's point of error, we begin by stating *Batson's* elements of a claim of purposeful discrimination:

A defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant [1] must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. [2] The defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. [3] Finally, the defendant must show that *these* [emphasis added] facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial

court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates [sic] a prima facie case of discrimination against black jurors.

*Batson*, 106 S.Ct. at 1723 (citations omitted). (The word "these," as emphasized above, has been substituted erroneously by the word "the" in some Texas cases explaining *Batson*. *See, e.g., Henry v. State*, 729 S.W.2d 732, 734 (Tex.Crim.App.1987); *Keeton I*, 724 S.W.2d at 65.)

Restated, the elements of a *Batson* claim are: (1) a showing of the defendant's race; (2) a showing that the State struck members of the defendant's race; and, (3) other facts and/or circumstances (including those found to exist under (1) and (2)) that raise an inference of purposeful discrimination. *Miller v. State*, 748 S.W.2d 459 (Tex.Crim. App.1988).

Once the defendant makes a *prima facie* showing, then (and only then) the burden shifts to the State to produce neutral explanations for its challenges to those jurors who share the defendant's race. *Batson*, 106 S.Ct. at 1723; *Keeton v. State ("Keeton II")*, 749 S.W.2d 861, 870–80 (Tex. Crim.App.1988). While the explanation need not rise to the level justifying a challenge for cause, the prosecutor must articulate a neutral reason related to the particular case to be tried. The trial court will then have the duty to determine if the defendant has established purposeful discrimination. *Id.*

■ In the instant case, it is the State's contention that appellant failed to produce any evidence to support the third element of his *Batson* claim. The essence of the State's argument is that, although appellant established that he was black and that the State struck black venire members, because appellant did not offer any witness testimony (other than that of his own counsel), he failed to make a *prima facie* claim.

The record reflects that the trial court did, in fact, find that appellant established a *prima facie* case. Therefore, we use the following standard of review: we view the entire record in the light most favorable to the factfinder's determination. *Keeton II*, slip op. at 879. We sit as a reviewing court and will not substitute our judgment for that of the factfinder, but will affirm the judgment if the record discloses sufficient evidence in support of the factfinder's decision. *Id.*

The Court of Criminal Appeals has described the amount of evidence required by *Batson* to satisfy the requirements of a *prima facie* claim to be "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true" or "to avoid a finding that the allegation is not true as a matter of law." *Tompkins v. State*, No. 68,870, slip.op. at 7 (Tex.Crim.App., Oct. 10, 1987). Therefore, because appellant established that he was black, the prosecutor struck black jurors, and the prosecutor's use of her strikes caused four of only six possible black veniremen to be struck, we reject the State's contention that appellant failed to raise a *prima facie* claim and hold that the trial court did not err in finding that appellant raised a *prima facie* claim.

■ Turning now to the question of whether the State adequately rebutted the appellant's *Batson* claim, we note initially that appellant bears the ultimate burden of proving the existence of purposeful discrimination. *Whitus v. Georgia*, 385 U.S. 545, 550 (1967). At the same time, we note that after an appellant raises a presumption of *Batson*-type race discrimination, the burden shifts to the State to rebut this presumption with neutral reasons. *See Keeton II*, at 870–80; *Tompkins v. State*, at 15.

The prosecutor explained that she struck one black juror because the juror testified to an inability to convict a person of aggravated robbery unless the actual gun used by the accused was placed into evidence. The prosecutor also believed that this same juror might have been biased against the State because the juror testified that criminal charges, now dismissed, had been filed *unfairly* against her son. The prosecutor explained that she believed this indicated bias on the part of the juror. Regarding the reasons for her striking another black juror, the prosecutor contended that the juror had appeared disinterested in the court proceedings, as reflected by glancing several times at the clock and conversing with the juror in the next seat. The prosecutor noted that she used two other peremptory strikes against non-black veniremen for this same reason. The prosecutor alleged that she struck a third black juror because she believed the juror's unemployed status and failure to answer completely the juror questionaire forms indicated a propensity to sympathize with appellant. In related testimony, the prosecutor noted that she struck non-black jurors for this same reason. The prosecutor explained that she was familiar with the fourth black juror because the juror was the mother of a woman with whom the prosecutor had been involved in a dispute. Because of this negative experience, the prosecutor was concerned that the juror might be biased against the State. She also contended that this juror slept through voir dire.

Each of these explanations, considered in the context of the voir dire as a whole, was sufficient to rebut the presumption of race discrimination. *See Keeton II*, at 870. Although appellant attempted to discredit the State's neutral reasons, the trial court chose to believe the State. This was its prerogative. The trial court is vested with the responsibility of determining from the totality of the circumstances—ranging from the explanations of the parties about why veniremen of a particular race were struck to the parties' unspoken interaction with veniremen during voir dire—whether an articulated neutral explana-

tion is but an excuse for improper discrimination. *Id.*, at 865. We hold that there was sufficient evidence in the record to support the trial judge's finding that there was no purposeful discrimination by the prosecutor in the use of her peremptory strikes.

We overrule the second point of error.

In his third point of error, appellant contends that the inclusion of an instruction in the court's charge on Texas' parole law, pursuant to Tex.Code Crim.P.Ann. article 37.07, § 4(a) (Vernon Supp.1988), was error requiring reversal.

The recent opinion of the Court of Criminal Appeals in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1987), holds that art. 37.07, § 4(a) is unconstitutional. However, *Rose v. State*, at 537, also holds that the *"Almanza"* rule applies. *Almanza v. State*, 686 S.W. 2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). *Almanza* requires, in addition to a showing of error by the trial court in its charge, a showing that appellant suffered harm resulting from the error. The level of harm a defendant must show depends on whether he preserved error by objecting properly at trial. *Id.*

■ Because appellant objected in the instant case, he need show only some harm. *Rose v. State*, at 537; *Almanza v. State*, 686 S.W.2d at 171. The Court of Criminal Appeals discussed the "some harm" standard in *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986), stating, "We now expressly find that, in the context of *Almanza*, ... the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient...." (Emphasis in original.) The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed in the record as a whole. *Almanza v. State*, 686 S.W.2d at 171.

■ Addressing these four areas in order, we note first that, after reading the statutory language of article 37.07, § 4(a)

to the jury, the trial court instructed the jury further:

> You are not to discuss among yourselves how long the accused would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas, and must not be considered by you.

Although this type of language ordinarily might mitigate somewhat the harm caused by some types of charging error, in the instant case it is redundant of the final paragraph of the statutory instruction itself. Thus, any harm caused by the charge is not necessarily alleviated by this language.

Second, the record reflects that appellant robbed a gas station and grocery store, the cashier of which was a long time friend of appellant. Appellant beat the cashier about the head with the gun, breaking his skull in two places and causing him to bleed profusely. Appellant forced the cashier to his knees and attempted to fire the gun behind the cashier's head, causing the cashier to believe appellant intended to kill him. Before appellant fled the store, he threatened the cashier, "I swear to God, if you say anything, I'll come back and I'll kill you." Finally, the cashier testified that appellant's aberrant behavior and appearance indicated that he was under the influence of narcotics at the time of the robbery.

These facts demonstrate that the State presented the jury with a violent and frightening crime—one involving a person who would physically attack and threaten to kill his own friend. Further, the jury was made aware of appellant's criminal past because the indictment alleged, and the State proved, a prior conviction for purposes of enhancement. Finally, during closing argument, the State mentioned prior criminal acts of appellant in the form of drug abuse and possession of a weapon. Thus, the record tends to support the severity of appellant's punishment, regardless of the inclusion of the parole instruction in the charge.

Third, the prosecutor did not refer to the parole statute, nor to the concept of parole itself, in closing argument. Although appellant's own attorney did refer to the parole statute briefly, he did so only to remind the jury not to consider parole law as applied to appellant in the instant case. These facts would, if anything, mitigate any harm caused by the trial court's erroneous instruction.

Finally, although appellant was eligible for 99 years or life imprisonment, and a fine of up to $10,000, the jury assessed a 57–year sentence and an $8,000 fine. Although the sentence assessed was within the upper half of the relevant penalty range, the result was warranted in light of appellant's criminal history and the brutality of the crime.

We hold that the inclusion of a parole instruction did not cause appellant *any* harm.

We overrule appellant's third point of error.

We affirm the conviction.