Opinion issued August 14, 2008
 





    







In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-06-00520-CR
____________

WARREN KEITH RANDLE II, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 184th District Court
Harris County, Texas
Trial Court Cause No. 1043509



 
MEMORANDUM OPINION

          A jury convicted appellant, Warren Keith Randle II, of possession with the
intent to deliver cocaine weighing at least 400 grams and assessed punishment at a
fine of $1.00 and confinement for 25 years in prison. See Tex. Health & Safety
Code Ann. § 481.112(f) (Vernon 2003). We determine whether the trial court
abused its discretion (1) in allowing the State to strike jurors on the alleged basis of
race in violation of the Equal Protection Clause and Batson,


 (2) in allowing the State
to present what is contended to be perjured testimony, (3) in not granting a motion for
severance, and (4) in allowing the State continually to allude to inadmissible evidence
without granting a mistrial. We affirm.
Facts
          This case arose out of a drug rip


 at appellant’s home. While appellant was
taking one of his children to school, two men entered his residence. One man held
appellant’s daughter at gunpoint, while the second man rummaged through the house. 
The second man came downstairs with two bags, whereupon appellant returned home. 
Seeing the armed men, appellant fled. The two men briefly chased appellant, but then
retreated so that appellant was able to return home.
          Harris County Sheriff’s Department deputies soon arrived pursuant to a
neighbor’s call to police for help. The neighbor, Mrs. Martinez, turned over to the
deputies a letter from a concerned subdivision resident alerting fellow residents that
appellant and his wife were dealing drugs in the neighborhood. Martinez had heard
screams and had observed two men chasing appellant; one wore a mask and the other
was armed and carried a bag. When the deputies approached appellant, he denied that
the robbers had carried any bags, and, without having checked his home first,
appellant said that nothing had been taken.
          The deputies checked appellant’s home and smelled a strong odor of cocaine,
especially in the master bedroom. They observed few signs of disorder, except in the
master bedroom, which aroused their suspicion. A videotape surveillance system in
the home aroused further suspicion because the deputies knew that illegal narcotics
traffickers used such systems. They also observed a broken window of the Cadillac
sedan parked in the garage. Appellant told them that he assumed that the robbers had
broken it.
          Appellant’s wife arrived driving a Cadillac Escalade, spoke with appellant, and
asked to leave. Rather than taking the Escalade, she moved a car in the driveway that
had blocked the sedan in the garage and drove away in the sedan. Suspecting that
contraband might be in the sedan, deputies pursued appellant’s wife. They stopped
her, smelled a strong odor of cocaine coming from the sedan, and saw a digital scale
inside a clear plastic bag in the car. Obtaining consent to search, the deputies found
in the trunk a duffle bag containing four large packages of cocaine. They arrested
appellant’s wife and contacted a detective, who had arrived at appellant’s home,
instructing the detective to arrest appellant. Appellant stated that his wife had no idea
about the narcotics and that they were his, not hers.
          Once appellant’s wife was returned to the home, appellant and his wife
consented to a search of the home. Inside a safe in the master bedroom, the deputies
found $4,500; appellant also had $1,100 on his person. A narcotics detection dog
made a positive alert on some of the recovered cash, indicating the presence of
narcotics.  
          Batson Challenge
          In his first issue, appellant argues that the trial court violated the Equal
Protection Clause by allowing the State to exercise peremptory challenges against
prospective jurors based on their race, in violation of Batson v. Kentucky.


 Appellant
complains that the trial court erred by not holding a proper Batson hearing. Appellant
asserts that the trial court ruled that appellant had not presented a prima facie case of
discriminatory exclusion thereby relieving the State of its burden to give race-neutral
reasons in regard to three prospective jurors: number 17, Olubusola Adeseye; number
23, Robert Francois; and number 38, Jeremiah McClean. Appellant requests a
remand for an evidentiary hearing in which the State would present its race-neutral
reasons for exercising these three peremptory strikes and the trial court would then
make its determination.
A.      The Facts
          The record reflects that appellant is African-American and that the three venire
members who were struck were also African-American. Initially, the trial court took
judicial notice of the comments made by these three prospective jurors and did not
require the State to give race-neutral explanations. However, later, the trial court did
find a prima facie case, and the State presented race-neutral reasons in regard to all
venire members who were challenged. In regard to prospective juror number 17, the
State explained that it exercised its challenge because it felt that he was uninterested. 
The State explained that it challenged prospective juror number 23 because he had
open warrants and challenged prospective juror number 38 because he had an open
criminal case. The trial court overruled appellant’s Batson motion.
B.      The Standard of Review and the Law Applicable to a Batson Challenge
          A trial court’s Batson decision is overturned only when there is a clear abuse
of discretion. Chambers v. State, 866 S.W.2d 9, 22 (Tex. Crim. App. 1993). A
prosecutor is generally allowed to exercise challenges “for any reason at all, as long
as that reason is related to his view concerning the outcome of the case to be tried.” 
Batson, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986). However, the Constitution
prohibits all forms of purposeful racial discrimination in selecting jurors. Id. 
Selection procedures that purposefully exclude on the basis of race undermine public
confidence in the fairness of our system of justice. Id., 476 U.S. at 87–88, 106 S. Ct.
at 1718.
          It is the defendant’s burden to demonstrate a prima facie case by showing that
the totality of the relevant facts gives rise to an inference of a discriminatory purpose
in the use of peremptory challenges by the proponent. Id., 476 U.S. at 93–94, 106 S.
Ct. at 1721. After the requisite showing has been made, the burden shifts to the State
to explain why the challenges were race-neutral. Id., 476 U.S. at 94, 106 S. Ct. at
1721. Unless a discriminatory intent is inherent in the explanation, the reason offered
will be deemed neutral. Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771
(1995). However, the State cannot meet this burden by general assertions that
officials did not discriminate or that they properly performed their official duties. 
Batson, 476 U.S. at 94, 106 S. Ct. at 1721. The State must give clear and reasonably
specific explanations of its legitimate reasons for exercising challenges. Tex. Dep’t
of Cmty. Affairs v. Burdine, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096 (1981). 
          Once the State has given non-discriminatory explanations, the burden shifts
back to the defendant to rebut those explanations by showing that they are pretexts
for engaging in racial discrimination. See Pondexter v. State, 942 S.W.2d 577, 581
(Tex. Crim. App. 1996). The trial court then has the duty to determine if the
defendant has established purposeful discrimination. Batson, 476 U.S. at 98, 106 S.
Ct. at 1724. In deciding whether the defendant made the requisite showing, the trial
court should consider all relevant circumstances. Id., 476 U.S. at 96, 106 S. Ct. at
1723. The ultimate burden rests with the defendant to show, by a preponderance of
the evidence, purposeful discrimination as the basis of at least one of the State’s
peremptory challenges. Whitus v. Georgia, 385 U.S. 545, 550, 87 S. Ct. 643, 646
(1967). If, from the evidence, the trial court believes that the State has exercised
peremptory strikes to exclude venire persons based on racial considerations, it has a
duty to so find. Tompkins v. State, 774 S.W.2d 195, 202 (Tex. Crim. App. 1987). 
C.      Analysis 
          Appellant’s initial contention that the trial court erred in not holding a hearing
and requiring the State to give race-neutral explanations is based on an incomplete
appraisal of the record. Although the trial court initially did not hold such a hearing,
it later did so. At that hearing, the State gave race-neutral explanations for striking
the prospective jurors. See Allen v. State, 751 S.W.2d 931, 935 (Tex. App.—Houston
[1st Dist.] 1988, no pet.) (holding that lack of interest is race-neutral reason to
exclude prospective juror); Boones v. State, 170 S.W.3d 653, 656 (Tex.
App.—Texarkana 2005, no pet.) (holding that outstanding warrant is race-neutral
reason). Because a discriminatory intent was not inherent in the State’s explanations,
the trial court properly deemed the reasons offered as race-neutral. See Purkett, 514
U.S. at 768, 115 S. Ct. at 1771. Moreover, appellant did not show that the State’s
explanations were a mere pretext. See Herron v. State, 86 S.W.3d 621, 631 (Tex.
Crim. App. 2002) (holding that trial court did not err in allowing State’s challenge
when State offered race-neutral reasons that appellant failed to rebut). 
          Accordingly, we overrule appellant’s first issue. Perjury
          In his second issue, appellant argues that the State knowingly presented
perjured testimony to the trial court and failed to acknowledge the same to the
defense or court, thereby denying him Due Process. Appellant contends that the trial
court erred in denying his motion for a mistrial based on the perjured testimony. 
A.      Facts
          At trial, the State presented the testimony of Martinez, appellant’s neighbor. 
Martinez’s testimony was given through an interpreter, Lenny Villavicencio. On
direct examination, Martinez testified that she had given investigating police officers
a letter that she had received in the mail prior to the offense because she felt that it
was important. This letter stated that appellant and his wife were involved with drugs
and urged the residents of the community to take action. During cross-examination,
outside the presence of the jury, appellant’s attorney asked Martinez if she had
discussed the letter with anyone, and she denied having done so. The following day,
Deputy Lewis testified that he had received the letter from another deputy, who had
been given it by Martinez. The contents of the letter were never discussed, nor was
the letter introduced or admitted into evidence. 
          After Martinez and Deputy Lewis had testified, Villavicencio spoke to the
court outside the presence of the jury. He stated that he had translated the cross-examination between appellant’s attorney and Martinez and that he had also
translated a conversation between Martinez and the assistant district attorney, Sally
Ring. He was sworn in as a witness and testified that Martinez and Ring had
discussed the letter. He stated that he did not think that the witness understood the
question. Villavicencio also stated that he did not think that the prosecutor and
witness had discussed the contents of the letter, although it was mentioned.
B.      The Law
          A mistrial is the trial court’s remedy for improper conduct that is “so
prejudicial that expenditure of further time and expense would be wasteful and
futile.” Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is
a remedy appropriate for a narrow class of highly prejudicial and incurable errors.
Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). The determination of
whether a given error necessitates a mistrial must be made by examining the
particular facts of the case. Id. 
          A person commits perjury if the person, with the intent to deceive and with
knowledge of the statement’s meaning, makes a false statement under oath or swears
to the truth of a false statement previously made and the statement is required or
authorized by law to be made under oath. Tex. Penal Code. Ann. § 37.02(a)(1)
(Vernon 2003). A person who commits perjury also commits aggravated perjury if
the false statement is made during or in connection with an official proceeding and
is material. Id. § 37.03(a) (Vernon 2003). A statement is “material” if it could have
affected the course or outcome of the official proceeding. Id. § 37.04(a) (Vernon
2003). 
          The State is prohibited under the Fourteenth Amendment of the United States
Constitution from the knowing use of perjured testimony. Vasquez v. State, 67
S.W.3d 229, 239 (Tex. Crim. App. 2002) (citing United States v. Bagley, 473 U.S.
667, 678–79, 105 S. Ct. 3375, 3377 (1985)). The prosecutor’s constitutional duty to
correct known false evidence is well-established both in law and in professional
regulations governing prosecutorial conduct. Duggan v. State, 778 S.W.2d 465, 468
(Tex. Crim. App. 1989). This duty is placed on the prosecutor in his capacity as the
State’s representative in criminal matters. Id. Prosecutors are more than mere
advocates: they are fiduciaries of the fundamental principles of fairness. Id. 
Furthermore, it is not necessary that the prosecutor actually know that the evidence
is false: it is enough that he or she should have recognized the misleading nature of
the evidence. Id. The purpose of imposing this duty is not to punish the prosecutor
or the trial court for error committed, but, rather, to avoid an unfair trial. Id. at 469. 
It is appellant’s burden to show that the testimony used by the State was, in fact,
perjured. Luck v. State, 588 S.W.2d 371, 373 (Tex. Crim. App. 1979).
C.      Analysis
          In order for a person to commit perjury, she must have the intent to deceive and
have knowledge of the statement’s meaning. Tex. Penal Code Ann. § 37.02(a)(1). 
The translator opined that even though Martinez had questions repeated to her, he did
not think that she understood the questions asked. Confusion or discrepancies in
testimony alone do not make out a case for perjury. Losada v. State, 721 S.W.2d 305,
312 (Tex. Crim. App. 1986); see Pearson v. State, 649 S.W.2d 786, 789 (Tex.
App.—Fort Worth 1983, pet. ref’d) (holding that witness’s inconsistency in testimony
was reasonable mistake, not perjury). Therefore, we hold that the trial court (1) did
not abuse its discretion if it implicitly determined that Martinez did not have the
requisite intent to deceive necessary for commission of perjury and, thus, (2) did not
abuse its discretion in overruling the motion for mistrial. See Tex. Penal Code.
Ann. § 37.02(a)(1).
          In addition, for purposes of aggravated perjury, a statement is “material” if it
could have affected the course or outcome of the official proceeding. Id. § 37.04(a). 
 The issue is not whether the false statement, in fact, affected the course or outcome
of the proceeding, but whether it could have affected the course or outcome of that
proceeding. Kmiec v. State, 91 S.W.3d 820, 823 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d). The false testimony must be related to the decision-making of the
proceeding. Id. Appellant contends that Martinez’s statements tainted the whole trial. 
However, the statements were made outside the presence of the jury and were never
repeated; as a result, they could not have affected the course or outcome of the
proceeding. Therefore, we hold that the trial court also (1) did not abuse its discretion
if it implicitly determined that Martinez’s testimony was not material and, thus, (2)
did not abuse its discretion in overruling the motion for mistrial on this basis. See
Tex. Penal Code. Ann. § 37.03(a).
          Accordingly, we overrule appellant’s second issue. 
Denial of Motion to Sever 
          In his third issue, appellant argues that the trial court erred in not granting his
motion to sever, thus denying him a fair trial in violation of Due Process of Law
Under the federal Constitution. See U.S. Const. amends. V, XIV.
          When appellant’s wife presented her motion to sever, appellant did not present
a motion to sever of his own. In fact, the trial court stated that appellant’s “lawyers
are not a part of this [his wife’s] Motion to Sever.” The record thus demonstrates that
appellant did not present his own motion, did not present evidence, and did not object
to the trial court’s ruling on his wife’s motion to sever. Therefore, appellant did not
preserve his complaint for appeal. See Tex. R. App. P. 33.1(a)(1)(A); Qualley v.
State, 206 S.W.3d 624, 636 (Tex. Crim. App. 2006); Williams v. State, 974 S.W.2d
324, 332 (Tex. App.—San Antonio 1998, pet. ref’d).
          Accordingly, we overrule appellant’s third issue. 
Denial of Motion for Mistrial
          In his fourth issue, appellant contends that the trial court erred in not granting
a mistrial because the State was allowed to allude to inadmissible evidence regarding
“information” about appellant, thus violating Due Process. The information was in
the letter alerting the subdivision residents to beware of the drug dealings of appellant
and his wife. Martinez turned the letter over to the deputies. Appellant contends that
the trial court erred by not granting a mistrial when the State was allowed to make
references to the letter. He argues that repeated violations were so prejudicial that the
issue could not have been withdrawn from the minds of the jury,


 resulting in a
wrongful conviction. 
A.      The Facts
          The record reflects that, during direct examination, Deputy Lewis testified that
one of the reasons for pursuing appellant’s wife was information in a letter that had
led him to believe that the vehicle contained illegal items or large amounts of cash. 
Appellant objected on the basis of hearsay, and the trial court instructed the jury to
disregard the statement and to consider it for no purpose. Appellant also asked for
a mistrial, which was denied.
B.      The Law
          In jury cases, proceedings must be conducted, to the extent practicable, so as
to prevent inadmissible evidence from being suggested to the jury by any means, such
as by making statements or offers of proof or by asking questions in the hearing of
the jury. Tex. R. Evid. 103(c). As we stated above in addressing issue two, a mistrial
is the trial court’s remedy for improper conduct that is “so prejudicial that expenditure
of further time and expense would be wasteful and futile.” Hawkins, 135 S.W.3d at
77. A mistrial is a remedy appropriate for a narrow class of highly prejudicial and
incurable errors. Wood, 18 S.W.3d at 648. The determination of whether a given
error necessitates a mistrial must be made by examining the particular facts of the
case. Id. The asking of an improper question will seldom be grounds for a mistrial
because, in most cases, any harm can be cured by an instruction to disregard. Id. A
mistrial is required only when the improper question is clearly prejudicial to the
defendant and is of such character as to suggest the impossibility of withdrawing the
impression produced on the minds of jurors. Id. Appellate courts presume that an
instruction to disregard the evidence will be obeyed by the jury. Gardner v. State,
730 S.W.2d 675, 696 (Tex. Crim. App. 1987).
          A trial court’s denial of a mistrial is reviewed under an abuse-of-discretion
standard. State v. Gonzales, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). An
appellate court is obligated to uphold the trial court’s ruling if that ruling is within the
zone of reasonable disagreement. Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim.
App. 2004).
C.      Analysis
          An officer is permitted to testify to the information upon which he acted. 
Parker v. State, 192 S.W.3d 801, 807 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (quoting Schaffer v. State, 777 S.W.2d 111, 114–15 (Tex. Crim. App. 1989)). 
However, the officer should not be permitted to relate historical aspects of the case,
replete with hearsay statements in the form of complaints and reports, on the ground
that he was entitled to tell the jury the information upon which he acted. Id. The trial
court ruled that the content of the letter could not be presented to the jury and
instructed the prosecutor to make sure that Deputy Lewis did not discuss the content.
In conformity with this ruling, the prosecutor never discussed the content, but only
the existence of the letter. Deputy Lewis stated only that one of his reasons to pursue
appellant’s wife was based upon a letter, but he did not testify about the content of
the letter. Because the contents were never discussed, no error occurred. See Black
v. State, 503 S.W.2d 554, 557 (Tex. Crim. App. 1974) (concluding that there was no
error when officer was not permitted to relate contents of report, but was allowed to
testify that he heard broadcast that gave description of participants); see also Ladd
v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) (concluding that no abuse of
discretion occurred when question asked by prosecution did not actually assert that
appellant was smoking cocaine on night of murder and trial court could have
reasonably concluded that question was not so inflammatory as to be incurable by
instruction). Nevertheless, even if error had occurred, the trial court could have
concluded that its instruction to disregard effectively removed any possible prejudice. 
See Wead, 129 S.W.3d at 130; Gardner, 730 S.W.2d at 696. Therefore, we hold that
the trial court did not abuse its discretion in denying appellant’s motion for mistrial. 
          Accordingly, we overrule appellant’s fourth issue. 
Conclusion
          We affirm the judgment of the trial court.
 
 
Tim Taft
Justice
 

Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2 (b).