Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

# MEMORANDUM OPINION

No. 04-07-00634-CR

James Albert **ROBINSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-5020
Honorable Sharon MacRae, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Rebecca Simmons, Justice
            Steven C. Hilbig, Justice

Delivered and Filed:    February 11, 2009

AFFIRMED

At trial, James Albert Robinson entered a plea of no contest to intoxication manslaughter and was sentenced to nine years imprisonment. On appeal, he argues that the State's use of peremptory challenges on two African-American venire members was a *Batson* violation and that he was denied his right to have the jury determine his guilt or innocence. We affirm.

## *Batson* Challenge

In his first issue, Robinson, an African American, claims that the trial court erred in overruling his challenges to the State's use of peremptory strikes against Juror No. 8 and Juror No. 38, the only two African Americans of the sixty-member venire panel. Robinson argues that the State used its strikes in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). According to Robinson, the race-neutral reasons for the strikes proffered by the State were pretextual, and the only objection the State actually had to these venire members was their race.

*Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. *Miller-El v. Cockrell*, 537 U.S. 322, 328 (2003). Second, if that showing has been made, the State must offer a race-neutral basis for striking the juror in question. *Id.* Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. *Id.* at 328-29. In proving purposeful discrimination, the burden of persuasion remains with the defendant, *Shuffield v. State*, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006), and the defendant must attack the prosecutor's race-neutral reasons as being contrived or pretextual to conceal racially discriminatory intent. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). At issue in this case is the third step; that is, whether Robinson met his burden to show that the State's proffered race-neutral reasons were pretextual.

With regard to this third step, we must sustain the trial court's ruling on the issue of discriminatory intent unless the trial court's ruling is clearly erroneous. *Gibson v. State*, 144 S.W.3d

530, 534 (Tex. Crim. App. 2004). A trial court's ruling is clearly erroneous when it leaves an appellate court with a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). "The clearly erroneous standard is an especially rigorous one where the findings are based primarily on oral testimony and where the trial judge has viewed the demeanor of the witnesses." *United States v. Fernandez*, 887 F.2d 564, 567 (5th Cir. 1989). Because a claim that the proffered race-neutral reasons for strikes are pretextual presents a question of fact, not law, the trial court is in the best position to evaluate such claims. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App.) *cert. denied*, 129 S.Ct. 92 (2008); *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). Additionally, race-neutral reasons for peremptory challenges often turn on aspects of a venire member's demeanor, such as nervousness or inattention, causing the trial court's first-hand observations to be even more important. *Snyder v. Louisiana*, 128 S. Ct. 1203, 1208 (2008). That is, the trial court must not only evaluate whether the prosecutor's demeanor belies discriminatory intent, but also whether the venire member's "demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id.* "[T]hese determinations of credibility and demeanor lie peculiarly within a trial judge's province," and we must defer to the trial judge "in the absence of exceptional circumstances." *Id.*

The State gave the following race-neutral reason for striking Juror No. 8, an African-American woman:

> All it took for me was her occupation, Judge, because she is a social worker. This case involves an application for probation. I would never keep a social worker on my panel in a case where I think the ultimate issue is [whether] somebody gets rehabilitation or somebody gets punishment. In fact, I liked the young lady quite a bit. But the fact that she's a social worker for the San Antonio Housing Authority was enough for me to strike her – not based on her race at all.

The State also stated that another reason for its use of peremptory challenge on Juror No. 8 was "that she couldn't decide on punishment or rehabilitation in response to [defense counsel's] question."[1]

The occupation of a venire member may serve as a race-neutral reason for use of a peremptory strike. *See Godine v. State*, 874 S.W.2d 197, 205 (Tex. App.—Houston [14th Dist.] 1994, no pet.); *Davis v. State*, 822 S.W.2d 207, 211 (Tex. App.—Dallas 1991, pet. ref'd); *York v. State*, 764 S.W.2d 328, 331 (Tex. App.— Houston [1st Dist.] 1988, pet. ref'd). Robinson does not contest that Juror No. 8's occupation was a race-neutral reason for use of a peremptory strike, only that this reason was pretextual. According to Robinson, if the State were truly concerned about Juror No. 8's occupation, it would have asked her more questions about her job as a social worker. Robinson also argues that if the State were truly concerned about social workers, it would have asked other venire members whether they had any connection to social workers. However, on this record, we must defer to the trial court's findings of the State's credibility and will not find clear error based on questions the State *should have asked.*

With regard to Juror No. 38, also an African-American woman, the State gave the following race-neutral reasons for its decision to use a peremptory strike:

> [Juror No. 38] said that she firmly believed that somebody would retaliate or could retaliate if an IAD investigation was made on some other officers, that certainly she was very strong on that.[2] But, yeah, that person could definitely retaliate. And she also said that she was for rehabilitation rather than punishment and that she wouldn't hold [a police officer][3] to a higher standard at all . . . . I struck neither lady because

---

[1] Defense counsel asked the panel whether the justice system should have as its main purpose punishment or rehabilitation.

[2] The appellant, Robinson, is a retired captain with the police department, who was in charge of internal affairs.

[3] Defense counsel asked the panel whether they would hold a law enforcement officer to a higher standard.

of the color of their skin. I struck one [Juror No. 8] because she was a social worker and the other woman because of her – I didn't get to talk to her individually because I ran out of time. So, the only thing I had to go on was the way she answered [defense counsel's] questions that she was more for rehabilitation, that she would not hold them to a higher standard, and that she had a concern about retaliation on the part of another officer against this gentleman.

Robinson argues that these reasons by the State were a pretext for racial discrimination because other jurors, who were not struck by the State and became members of the jury, answered similarly to favoring rehabilitation, to not holding police officers to a higher standard, and to being concerned with retaliation. However, we cannot automatically impute racial discrimination every time the State's race-neutral explanation would also apply to another venire member. "The decision to strike a particular venire person is not susceptible to rigid quantification; rather, it is a fluid process, often hinging on the interaction of a number of variables and permutations." *Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992). When the State gives more than one race-neutral reason for striking a venire member, that one or more of these race-neutral reasons also apply to other venire members does not necessarily establish disparate treatment. *Pondexter v. State*, 942 S.W.2d 577, 582 (Tex. Crim. App. 1996). The race-neutral reasons given by the State must also be considered in their entirety to properly assess whether the State's reasons were pretextual. *Id.* Here, the record is silent as to the State's reasoning for not striking other venire members. We must defer to the trial judge who was in the best position to judge the credibility of the State and the venire members. *See Miller-El*, 537 U.S. at 339 (2003) (explaining that the credibility of the prosecutor's reasons for disparate striking of jurors can be measured by "the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy").

Further, we note that while Robinson relies on *Snyder v. Louisiana*, 128 S. Ct. 1203 (2008), the facts of *Snyder* are distinguishable. In *Snyder*, the Supreme Court found purposeful discrimination even though facially-neutral explanations were offered. *Id.* at 1211. The Court found the prosecutor's race-neutral explanations implausible given the inconsistent manner in which the prosecutor applied those race-neutral explanations. *Id.* Here, however, although other empaneled members answered similarly to Juror No. 38, no other member answered exactly the same as Juror No. 38 to all three questions regarding rehabilitation, holding a police officer to a higher standard, and having a concern about retaliation. For example, although Juror Yanez, like Juror No. 38, stated that she had a concern about retaliation and that she would not hold a police officer to a higher standard, Juror Yanez, unlike Juror No. 38, also stated that she believed the main purpose of the justice system was to punish offenders. Similarly, although Juror Toy, like Juror No. 38, said that he would not hold a police officer to a higher standard, he also stated that he holds a commercial driver's license, which requires that he not drink within twelve hours of driving, and that one of his job requirements is that he not drink alcohol at all. Given this record, we cannot hold that the trial court clearly erred in determining that Robinson did not meet his burden to prove that the State's reasons were not pretextual.

## RIGHT TO JURY TO DETERMINE GUILT/INNOCENCE

In his second issue, Robinson argues that he was deprived of his right to have the jury determine guilt. Robinson, however, entered a plea of no contest pursuant to Article 26.14 of the Code of Criminal Procedure. Article 26.14 provides the following:

**26.14   Jury on plea of guilty**

Where a defendant in a case of felony persists in pleading guilty *or in entering a plea of nolo contendere*, if the punishment is not absolutely fixed by law, a jury shall be impaneled *to assess the punishment* and evidence may be heard *to enable them to decide thereupon*, unless the defendant in accordance with Articles 1.13 or 37.07 shall have waived his right to trial by jury.

TEX. CODE CRIM. PROC. ANN. art. 26.14 (Vernon 1989) (emphasis added).

After much discussion outside the presence of the jury and the trial court noting that it had never had a person enter a plea of no contest to a jury, the court admonished Robinson that if any evidence was submitted showing that he was guilty of the crime, the jury would be instructed to find him guilty. Robinson stated that he understood. The following exchange between the court and defense counsel then occurred:

> Court:     That means – and the basic difference in the two pleas is that you're not going to be able to – I mean, a no contest plea could not be used as evidence against you in some kind of civil proceeding, whereas a guilty plea could be. Some kind of civil case that arose out of these facts and circumstances. And you have a right to submit all of this to the jury to have them decide your guilt or innocence. You have a right to question the witnesses when they come here. You have a right to see them. You have a right to remain silent. And if you enter this plea, those rights, you pretty much have to give them up. Do you understand that?

> Defense:   Well, Judge, we certainly understand the Court's position on it. Our intent is not to contest any of the allegations or the evidence in the guilt/innocence phase. We don't want to acquiesce, and a statement that we're giving up those rights. We do want the jury to make the decision.

Court:      Well, then you know what? I'm not going to accept this no contest plea. I'm going to enter a plea of not guilty for him then. Because you can't have it both ways. You can't say –

Defense:    Well, we have a right to plead no contest, Judge.

Court:      -- I give up this right, and I'm not giving up this right, and you're kind of giving up this right.

Defense:    A no contest plea does not give up a right to a jury, Your Honor – 26.14 tells us we can plead no contest to this jury.

Court:      You can plead guilty or you can plead no contest and then what else does it say? Then it says that the issue is punishment.

Defense:    Right.

Court:      So, believe me, you are giving up a right. You are giving up a right to have them determine the guilt or innocence of the defendant.

Defense:    Now I see, Your Honor. *I agree with you.*

Court:      So, you definitely give up a right when you plead no contest to them.

Defense:    Yes. I understand, Your Honor.

Court:      And if you don't want to acquiesce in that, then, like I say, I'll just enter a not guilty, and we'll just go do the whole thing.

Defense:    No, we understand, Your Honor.

Court:      So, what do you want to do?

Defense:    We want to enter a plea of no contest.

> Court:      Okay. So, you know that you're giving up those rights, Mr. Robinson?
>
> Robinson:   Yes, Your Honor.
>
> Court:      And you're sure that's what you want to do?
>
> Robinson:   Yes, Your Honor.

(emphasis added).

In its case in chief, the State presented evidence of Robinson's guilt. At the charge conference, the defense objected to the charge instructing the jury to find him guilty.

Robinson now complains that he was denied his right to a jury trial on guilt/innocence. However, Article 26.14 states that if a defendant enters a plea of guilty or no contest, "if the punishment is not absolutely fixed by law, a jury shall be impaneled *to assess the punishment* and evidence may be heard to enable them to decide *thereupon*, unless the defendant in accordance with Articles 1.13 or 37.07 shall have waived his right to trial by jury." TEX. CODE CRIM. PROC. ANN. art. 26.14 (Vernon 1989). The Texas Court of Criminal Appeals has interpreted "thereupon" to refer to the jury deciding punishment. *See Beard v. State*, 146 Tex. Crim. 96, 100, 171 S.W.2d 869, 872 (1943) ("We think it quite clear that the word 'thereupon' means and refers to the punishment to be meted out by the jury.").[4] Thus, because Robinson entered a plea of no contest pursuant to Article 26.14, a jury needed to be impaneled to decide punishment.

We note that Robinson relies on the final phrase of Article 26.14: "a jury shall be impaneled to assess the punishment and evidence may be heard to enable them to decide thereupon, *unless the*

---

[4] The court of criminal appeals was interpreting an earlier version of the statute: "Where a defendant in a case of felony persists in pleading guilty, if the punishment is not absolutely fixed by law, a jury shall be impaneled to assess the punishment, and evidence submitted to enable them to decide thereupon." *Beard*, 171 S.W.2d at 871-72.

*defendant in accordance with Articles 1.13 or 37.07 shall have waived his right to trial by jury.*" TEX. CODE CRIM. PROC. ANN. art. 26.14 (Vernon 1989) (emphasis added). Robinson claims that he did not waive his right to trial by jury in accordance with Articles 1.13 or 37.07, which he emphasizes adopted the bifurcated trial system. *See Brumfield v. State*, 445 S.W.2d 732, 737-41 (Tex. Crim. App. 1969); *see also Barfield v. State*, 63 S.W.3d 446, 449 (Tex. Crim. App. 2001) ("A bifurcated trial procedure was authorized in the 1965 revision of the Code of Criminal Procedure."). Thus, he argues that he was denied his right to a bifurcated trial. However, Article 26.14's language regarding the defendant waiving his right to trial by jury in accordance with Article 1.13 or 37.07 does not refer to a defendant's right to have a bifurcated trial despite having entered a plea of no contest. *See Barfield*, 63 S.W.3d at 449 (explaining that Article 37.07's bifurcated-trial procedure "is applicable only to pleas of not guilty before a jury"). It refers to his right to have the jury decide punishment.

## CONCLUSION

We affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish